STATE, Respondent, v. BALLARD, Appellant

(33 N. W.2d 339.)

(File No. 8980.  Opinion filed June 30, 1948.)

Rehearing Denied Aug. 11, 1948.

**Sigurd Anderson**, Atty. Gen., and **E. D. Barron**, Asst. Atty. Gen., **Roland Cutler**, State's Atty., Jerauld County, of Wessington Springs, for Plaintiff and Respondent.

**William Ochsner**, of Wessington Springs, for Defendant and Appellant.

RUDOLPH, J. The defendant was convicted of rape in the second degree and has appealed to this court. Defendant while residing at Huron where he was employed as a cream station superintendent and traveling over a territory in eastern South Dakota was employed by the First Baptist Church in Wessington Springs as a lay pastor. For a time defendant continued to reside in Huron and made weekly trips to Wessington Springs to serve the church. In January 1944 defendant with his family, which consisted of his wife and three children, moved to Wessington Springs and occupied a house that is described in the evidence as the Cutler house. This was a five-room house with two bedrooms upstairs. The prosecuting witness, Opal Bucholz, attended the Baptist Church and became acquainted with the defendant. Shortly after defendant and his family moved to Wessington Springs Opal went to the Ballard home to room while attending high school. She became 16 years of age on February 8, 1944. Opal testified that shortly after going to the Ballard home defendant commenced reading the Bible to her and became very personal and told her "it was O.K. to have free love being he was the pastor." She further testified to numerous instances of sexual intercourse while she was staying with the Ballards at the Cutler house, these acts occuring at the house and in defendant's automobile at different places in the vicinity of Wessington Springs. In the latter part of May 1944 the Ballards moved from the Cutler house to a house described in the evidence as the Week's house. The Week's house was larger than the Cutler house having four bedrooms upstairs and a study downstairs. In November 1944 Opal was operated for appendicitis at Huron and after about two weeks returned to Wessington Springs to stay at her sister's home during convalesence. During this time the defendant visited her at least once a day and sometimes twice and in one of these

visits Opal's sister found them in a compromising position. In January 1945 Mrs. Ballard went to Sioux City to be away several weeks. The defendant made arrangements for Opal, who was not then attending school, to come to the Ballard home and stay during the absence of Mrs. Ballard. Opal arrived at the home either the day that Mrs. Ballard left or the day after. Opal testified that the first day she came to the Ballard home following Mrs. Ballard's departure for Sioux City, she had sexual intercourse with the defendant and that she had such intercourse with him each day during Mrs. Ballard's absence. During this time of her stay at the Ballard home there were in the house, in addition to the defendant and Opal, the three Ballard children and two girl roomers who were attending school in Wessington Springs. Each of these girls testified she observed no intimate relations between the defendant and Opal although one of the girls testified that Opal had stated to her that Mrs. Ballard had objected to Opal's relationship with the defendant. In August 1945 Opal went to Sioux City to attend Bible School and she testified that the defendant came down to Sioux City usually every week and on these occasions they continued their illicit relations. On one of these occasions they stayed together overnight at the Warrior Hotel. On another occasion she was returning to Sioux City after Thanksgiving and was met at Mitchell by defendant who took her to Yankton where they stayed overnight at the Flaming Cabins. On another occasion she went with defendant to Grand Island, Nebraska, where they stayed at the Yancy Hotel. Opal testified that on these occasions defendant registered at the hotels under an assumed name and in each instance the signature alleged to have been signed by the defendant on the register was obtained and compared with handwriting of the defendant by a handwriting expert who testified that the signature was in the same hand as the writing with which it was compared. On at least one of these occasions the evidence shows that the name of John Bell was used. On December 10, 1945, there was issued a warrant for the arrest of defendant on the charge of rape in the second degree. Defendant at that time was not in Wessington Springs and the sheriff attempted to

locate him by telephone. Within a day or two after the issuance of this warrant defendant called the sheriff from Nebraska and defendant asked the sheriff if he had been looking for him; the sheriff advised defendant that he had but did not tell him the nature of the charge. Defendant advised the sheriff that he would be in Wessington Springs on the following Saturday. Defendant was not seen again until he was apprehended through the F. B. I. on March 8, 1947 at Jeraud's Fort, Pennsylvania. During the absence of defendant there was received by Mr. Harold Schultz a letter signed by John R. Bell. Mrs. Schultz is a sister of Opal. The letter is as follows:

"Hello!

"I remember you folks told me I could count on you to not say anything and that you would be glad to help when you could, and I believe that I can trust you to not mention to a soul that you heard from me.

"I want very much for you to give a note to Opal from me where ever she is and when no one will know that you gave it to her. I am well and doing good and hope the same is true with you folks. I will see that you are many times repaid for all the help.

"Yours truly,
"John R. Bell."

The letter enclosed for Opal is as follows:
"Be sure and destroy this letter.

"Hello Honey:

"I sure have wondered about you. Sure hope the best for what you have been through. Boy is this a lonely old world without you. I hope you still feel the same and believe you do. I want you to get away for good can you do it. Can you borrow the money from Harold if so I will send it right back to them. Or should I send you the money to Harold to you.

"I have been clear to Mexico but will come back to Independence, Mo., to get your letter. Write it to Mr. John R. Bell, Independence, Mo. I will see that some one gets it as I must not chance being caught. They will send it on to me with out reading it.

"Hope you still want this rat. I am well and hope you are the same. I still do not forget 6:00 o'clock every night.

"Yours forever

"John R. Bell

(back of letter)

"Hope you are happy, if you do not care for me write anyway and tell me. I sure hope you feel the same about me as I do you. Write a long letter I need it.

"Do not come till I write you giving you the directions where to come to. Sure hope it will be possible for you to get away. As soon as possible if it is what you are sure you want to do."

The handwriting expert comparing the handwriting of the letter with writings of the defendant testified that both were wirtten by the same party. It appears that the Schultzes made a trip to Sioux City with the defendant and his wife and while the defendant was returning the Schultzes to their home in the country near Wessington Springs and in the absence of his wife, he told them that Mrs. Ballard would die soon and that he planned to marry Opal, that they should not tell anyone about these plans. Opal testified that defendant had advised her that Mrs. Ballard would not live more than six years and that then they would be married. The defendant did not take the witness stand and Opal's testimony stands undisputed unless it is disputed by the girls residing at the house who stated they observed no intimate relationship between the defendant and Opal and by Mrs. Ballard who testified that she observed nothing intimate between the two and also that there was no opportunity for such intimacy because of the free access to and within the house occupied by the Ballards. Other features of the evidence will be discussed in connection with the Assignments of Error.

■ We first consider appellant's contention that the record fails to establish the writing, with which the expert compared the other writings, as the writing of the appellant. This writing, Exhibit D, was a portion of a so-called Bible lesson of which Opal had written a part and which, Opal testified, was completed by the appellant. Opal testified that

she knew the handwriting of the appellant and that she had occasion to examine his handwriting while taking a Bible course under his direction. She further testified to receiving numerous letters from him all of which she destroyed at his direction, and she testified definitely that the writing of that part of the Bible lesson with which the comparson was made was the writing of appellant. Exhibit D was competent as evidence to show the relationship existing between Opal and appellant and was suffiicently proved as the handwriting of appellant. 20 Am. Jur., Evidence, § 836. No question is here presented of writings which are not otherwise connected with the case and not admissible for other purposes being introduced solely as a standard of comparison. Exhibit D was competent evidence in the case and properly identified as being in the handwriting of the appellant. When the expert was called to make a comparison of the other writings with Exhibit D there was no objection by appellant to the use of Exhibit D as the basis for comparison. We find no error, under this record, either in the admission of Exhibit D or using it as a basis for comparison.

■ At the close of the state's case the defendant requested the court to require the state to elect which of the several acts of sexual intercourse as shown by the evidence it relied upon for conviction. The state elected to rely upon the first act after Mrs. Ballard left for Sioux City in January 1945. Appellant contends that the evidence of acts subsequent to the act upon which the state elected to rely was inadmissible. This court in the case of State v. Yeager, 41 S. D. 51, 168 N. W. 749, 750, approved the general holding that prior or subsequent acts are admissible as proof of the particular act relied upon. The court quoted with approval the following:

"'An adulterous disposition existing in two persons towards each other is commonly of gradual development; it must have some duration, and does not suddenly subside. When once shown to exist, a strong inference arises that it has had and will have continuance, the duration and extent of which may be usually measured by the power which it

exercises over the conduct of the parties. It is this character of permanency which justifies the inference of its existence, at any particular point of time, from facts illustrating the preceding or subsequent relations of the parties'."

In view of its holding and the fact that the court cited with approval Bishop on Statutory Crimes, § 682, and Wigmore on Evidence, § § 398-402, it is difficult to understand why, in the last paragraph of the opinion, a distinction was drawn between previous and subsequent acts as to the type of proof necessary to make such acts admissible. Be that as it may the testimony by Opal of the subsequent acts found support in the hotel registrations, and cannot be classed as "the naked, unsupported testimony of the prosecuting witness." We find no error in the admission of testimony of the subsequent acts.

After receiving the case the jury deliberated approximately nineteen hours. Thereafter the court further instructed the jury, and the clerk's minutes disclose the following:

"The Court ordered the Jury into the Court Room at 10:45 June 5, 1947 to receive further instructions, which they had asked the Court to give them, on points they did not clearly understand, such instruction was given by the Court and the jury reported back in the Court Room at 12:50 and announced they had arrived at a unanimous verdict, * * *".

The proceedings leading up to these further instructions are set forth in the transcript as follows:

"Gentlemen of the Jury, the Court is advised by the Bailiff that the Jury has desired to be brought in to make some inquiry or ask for some information, is that right?

"Foreman: Yes.

"Q. Will you indicate what it is that you desire to be advised on? A. I think it is on Instruction No. 4.

"Q. Do I understand, gentlemen, that in this Instruction No. 4 you are uncertain and in doubt as to what the instruction means? A. It is the time and place, whether we have to base a verdict on just the time and place.

"Q. And is that all you were in doubt about? Any other instructions? A. I think that was the main one.

"Q. Is there anything about Instruction No. 5? I note on your copy that you have underscored the words in the fifth line. A. That's right.

"Q. The words underscored being 'as to the relations'. May I inquire of the Jury, is there some uncertainty in your minds as to what is meant by those words? A. I think it was in the eighth line, the underlined words.

"Q. The phrase appearing in the tenth line? A. Yes.

"Q. Where it says 'may be considered by you only'? A. And twelve lines down from the first check.

"Q. This is the sentence: 'This evidence as to their relations before and after the alleged rape, and as to other alleged acts of sexual intercourse are admitted and may be considered by you only in connection with all of the other testimony and evidence in this case in determining the question of whether or not the defendant, Wayne F. Ballard had sexual intercourse with this child on the occasion relied upon by the State as having occurred in the defendant's home in Wessington Springs, Jerauld County, South Dakota, on the day or the day following, Mrs. Ballard left for Sioux City, Iowa'. I think I know what you want. Please return to your Jury room and I will prepare another instruction for you. I will have it in writing for you and it will be brought in and given to you later."

The court thereafter gave the following "Further Instructions":

"At your request, you have been brought into Court, where, in the presence of the defendant your Foreman has requested further instructions on such phases of this case as are touched on in Instructions 4 and 5 of the Court's Instructions as given to you in this case.

"Instruction No. 4 calls your attention to the fact that there is testimony as to several acts of sexual intercourse between the defendant and Opal Bucholz during the month of January, 1945, as well as before and after that month, all of this testimony is as to sexual acts which occurred before Opal reached the age of eighteen years. You should under-

stand, and I do hereby instruct you that each and every one of these acts of sexual intercourse constituted the crime of rape, and that the State is entitled to prosecute the defendant for each one of said acts as a separate and distinct crime. In this case, the State could have prosecuted the defendant for each separate act of sexual intercourse with this child, all in the same prosecution, by alleging each separate act in a separate count of the same Information, because each act of intercourse was, as I have told you, a separate and distinct crime.

"This, however, the State did not do, because the Information contains but one count or charge, which is, that at some time between the first day of January, and the first day of February, in the year 1945, and at the defendant's home in Wessington Springs, South Dakota, the defendant had sexual intercourse with Opal Bucholz. Under this Complaint, or Information, the State was entitled to select any act of intercourse occurring in that month, but at no other time, as the act upon which it would rely for conviction. The reason for this is that, while any act of intercourse which the defendant may have had with Opal within three years before the Information was filed, could have been the legal basis for prosecution and conviction, if proven beyond a reasonable doubt, it was necessary that each and all of the Jury believe beyond a reasonable doubt that the same act of intercourse was committed by these people. Therefore, I required the State to pick out some one act of sexual intercourse so that all of you would have your attention centered on the same approximate act.

"Now, this is not because any one of these sexual acts which were testified to by Opal was any other or different or any more or any less important than any other, but to get your minds all in focus on the same act. Therefore, the State might have elected to rely on any act of intercourse between these people which occurred in Jerauld County. The State chose to rely on the first sexual act which occurred after Mrs. Ballard left for Sioux City. The obvious purpose of so doing is that it is an undisputed fact that Mrs. Ballard did sometime in the early part of January, 1945, go to Sioux City, for a more or less extended visit

and, that, about the time she left home, Opal entered the house to keep house and to look after the children. The State charges, and Opal says, that, after she came to the Ballard home, several sexual acts occurred. Now, if you believe beyond any reasonable doubt that there was one or more such sexual acts between these two people, it is necessary that one of them was the first act.

"It is this first act upon which the State has chosen to rely for conviction. Not the last one, or any in between. According to all the evidence, Mrs. Ballard left around about January 8, and this act occurred, if at all, shortly afterward. It is immaterial whether this was on January 8, or on some other date in that month. The question really is, did the defendant have sexual intercourse with Opal Bucholz after his wife left town and after Opal came to the house, and in the month of January, 1945, at the defendant's home in Wessington Springs, Jerauld County, South Dakota, before Mrs. Ballard returned from Sioux City. If you believe this to have occurred beyond a reasonable doubt, then you should find the defendant guilty as charged, and you need not concern yourselves with the exact date it occurred so long as it is within the range of time I have specified.

"All the testimony and evidence as to other acts of intercourse between these two, both without and within the County, and as to their relationship and assoication with each other, was admitted and should be by you considered to the extent that it tends to corroborate the testimony of the girl, Opal, as to the act of sexual intercourse in January, 1945, on the occasion I have detailed.

"If, however, you do not believe beyond any reasonable doubt that the defendant had sexual intercourse with this girl in January, 1945, at his own home, in Wessington Springs, and while his wife was absent on this Sioux City trip, it is wholly immaterial that he may have had such intercourse at some other time and place."

The appellant vigorously contends that the court erred in stating to the jury, "You should understand, and I do hereby instruct you that each and every one of these acts of sexual intercourse constituted the crime of rape, and that

the State is entitled to prosecute the defendant for each one of said acts as a separate and distinct crime." It is clear that this sentence taken from its context and standing alone was erroneous. But when viewed in the light of the instructions as a whole we do not believe that it was prejudicial. The court was trying to explain to the jury the purpose of testimony regarding acts other than the act upon which the state elected to rely, and followed this erroneous statement with the statement that "while any act of intercourse which the defendant may have had with Opal within three years before the Information was filed, could have been the legal basis for prosecution and conviction, if proven beyond a reasonable doubt, it was necessary that each and all of the Jury believe beyond a reasonable doubt that the same act of intercourse was committed by these people. Therefore, I required the State to pick out some one act of sexual intercourse so that all of you would have your attention centered on the same approximate act." Throughout the instructions the court emphasized that the state had elected to seek a conviction on a certain act, and that the jury must agree upon such act or acquit the defendant. The reference by the court to these other acts appears to be for the purpose of emphasizing to the jury that to justify a verdict of guilty agreement must be reached upon the particular act. Obviously the court should not have instructed that each of these other acts constituted rape, but as stated above when he followed this with his statement that each of such acts could be the basis for prosecution and conviction if proved beyond a reasonable doubt in a different action, we are convinced that no prejudice resulted to the defendant. We are further convinced from a reading of the regular instructions together with the "further instructions", that it should have been and was clear to the members of the jury that their minds must meet upon the particular act upon which the state elected to rely. This case is, therefore, distinguishable from the case of State v. Riggs, 25 S. D. 275, 126 N. W. 509, upon which appellant strongly relies. In that case the court disregarded in its charge the election it had required as to a particular act.

■ Appellant further complains that in its further instructions the court advised the jury that Opal had not reached the age of 18 years at the time of the alleged acts. The age of Opal was never disputed, and the evidence upon this point was conclusive. This contention is ruled against appellant in the case of State v. Sjoberg, 54 S. D. 375, 223 N. W. 320.

■ We have considered the entire record and transcript and conclude with regard to any error appearing in the instructions that the quotation in the case of State v. Syverson, 39 S. D. 638, 166 N. W. 157, 160, is especially pertinent " 'New trial should be granted only where the substantial rights of the accused have been so violated as to make it reasonably clear that a fair trial was not had. In all cases removed to the highest court for review, the evidence, when returned on the appeal, should first be looked to for the purpose of determining the guilt or innocence of defendant. If there be no doubt of his guilt, alleged errors not affecting his substantial or constitutional rights should be brushed aside, and in their place substituted the almighty force and power of truth.' " This court is expressly directed to disregard error which does not affect the substantial rights of the defendant. SDC 34.2902. See also the following cases where the rule has been applied. State v. Sjoberg, 54 S. D. 375, 223 N. W. 320 State v. Staley, 54 S. D. 552 223 N. W. 943; State v. Kaiser, 58 S. D. 132, 235 N. W. 366; State v. Sitts, 71 S. D. 494, 26 N. W.2d 187.

We have considered other alleged error and conclude no further discussion is necessary.

The judgment appealed from is affirmed.

All the Judges concur.