LELAND W. HENDERSON *v.* STATE OF INDIANA.

[No. 1-873A147. Filed March 27, 1974.]

*Harry L. Zerbe,* of Lawrenceburg, *Charles A. Thompson,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

LOWDERMILK, J.—The defendant-appellant in this cause was charged with a violation of uttering a forged instrument pursuant to IC 1971, 35-1-124, Ind. Ann. Stat. § 10-2102 (Burns 1956).

Appellant filed a special plea of insanity setting up as a defense that he was of unsound mind at the time the offense charged was committed. Trial was to a jury, which found the defendant guilty of the crime charged and he was duly sentenced by the court.

Defendant-appellant timely filed his motion to correct errors which was by the court overruled.

The second issue which the appellant relies on for reversal is specification 11 of his motion to correct errors, which is in the words and figures as follows, to-wit:

"11. That the Court erred in refusing to allow defense witness Donald Schmits, a psychologist who was a defense witness on the insanity issue in the trial, to testify as to what he learned as the result of a family interview with the family of the accused which was a necessary and proper part of his examination of the defendant;"

We deem it unnecessary to set out the other specification on which appellant relies for reversal for reasons hereinafter set out in this opinion. The rest and remainder of the specifications of the motion to correct errors have been waived by appellant by his failure to argue the same in his brief, under Indiana Rules of Procedure, Appellate Rule 8.3(A)(7).

In the trial of the cause defendant-appellant called Dr. Donald Schmits, a psychologist, who was a professor at the University of Cincinnati, and qualified him as an expert to testify as to the sanity or insanity of the defendant-appellant.

When Dr. Schmits was asked if he had an opinion as to defendant's sanity at the time the alleged offense was committed, he answered by saying that before answering the question he should state his analysis of his interview with defendant's family for the purpose of clarifying and putting into perspective his ultimate conclusion as to defendant's sanity.

The State objected to the offered testimony on the ground the evidence was hearsay and the court sustained the objection.

The appellant vigorously urges the rule against hearsay does not require the exclusion of such evidence as the doctor offered in this case and that the exclusion of the evidence was prejudicial and reversible error.

Appellant points out that the expert testimony in the case at bar was not offered for the purpose of proving the truth of matters stated therein but rather, the evidence of the interview with appellant's family was offered for the sole and limited purpose of demonstrating the analytical basis upon which rested Dr. Schmits' ultimate opinion as to defendant's sanity.

After reviewing the history of the admission of evidence of expert witnesses in cases of this kind and considering the cases cited by the respective parties, together with much research of our own, this court has not determined that our courts have become more liberal in the admission of evidence of experts from days gone by to the present.

This is particularly true in the trial of a criminal cause where the special defense of insanity is properly brought before the jury.

Our Supreme Court discussed this point in the case of *Twomey* v. *State* (1971), 256 Ind. 128, 132, 267 N.E.2d 176, as follows:

> "Once a plea of insanity is offered by a defendant, all relevant evidence is deemed admissible. In *Wilson* v. *State* (1966), 247 Ind. 454, 461, 217 N.E.2d 147, 151, we stated:
>
> 'It has been repeatedly held that a plea of insanity opens wide the door to all evidence relating to the defendant and his environment. In many instances evidence would not otherwise be competent or material except for showing the mental condition or mental state of the defendant.'"

The rule as laid down in *Walter* v. *State* (1935), 208 Ind. 231, 245, 195 N.E. 268, is as follows:

> ". . . The rule is that where witnesses give opinion evidence, the facts upon which they base their opinion

may be shown in order that the jury may weigh the opinion in the light of the facts upon which it is based."

In the case of *Trinity Univ. Ins. Co.* v. *Town of Speedway* (1965), 137 Ind. App. 510, 515, 210 N.E.2d 95, the court determined that although the expert witness consulted with other individuals pertaining to the pertinent issue before the court, it did not render the expert witness's testimony hearsay. The court went on to say the following:

". . . An expert is competent to judge the reliability of statements made to him by other persons and taking these statements made to him by other persons together with his own first hand observations comprises a sufficient basis for a direct expression of his own professional opinion as to the cost of repairing the street. . . ."

In the case of *City of Evansville* v. *Rinehart* (1968), 142 Ind. App. 164, 167, 233 N.E.2d 495, this court approved the following contention which was made by the appellant:

". . . where an expert witness has given his opinion, the basis upon which he has formed his opinion should also be allowed, and for that reason, it is an exception to the hearsay rule. . . ."

Jones on Evidence, 6th Ed. 1972, Vol. 2, p. 642, in speaking of this rule, said:

"But courts and rule makers have yielded to the pressures of expediency so as to recognize a relaxation of the exclusion of otherwise inadmissible hearsay, to the extent that it may be considered as a part of the witness's legitimate cumulation of knowledge if the hearsay information is of that sort as is customarily relied upon by experts in the practice of their profession. The sanction of the general experience and reliability of the expert to sort out the acceptable information upon which he relies, from the unacceptable, is considered an adequate safeguard.

\* \* \*

Another example is where a witness in medical science relies on extracts from treatises in that science which he states are recognized by his profession as authoritative and which have influenced or tended to confirm his opinion.

And under exceptional circumstances physicians have been allowed to rely on information respecting a patient furnished by the patient's relatives."

While it is true that Dr. Schmits was not a medical doctor, he was qualified as an expert in the field of psychology and as a psychologist deals with the workings of the human mind. Psychologists are often called upon by doctors to assist them in determining mental ailments of patients, and we are of the opinion that the rules that are above set out may equally apply to the testimony of a psychologist and a medical doctor.

In the case of *Smith* v. *State* (1972), 259 Ind. 187, 285 N.E.2d 275, 276, 277, our Supreme Court was faced with the issue of whether testimony of expert witnesses should have been excluded because it was based, in part, upon information gained in hospital records. The authors of the reports were not in court where they could be cross examined. The objection to their testimony was that the records were hearsay evidence. The court discussed the expert testimony and the factual basis therefor as follows:

"Although medical reports containing observations and expert opinions relating to a defendant's sanity or insanity should not be admitted directly into evidence, they may be used to aid another expert in formulating his opinion as to the defendant's sanity. The function of an expert witness in a case concerning sanity or insanity is advisory in nature. He does not state a *fact* but gives an *opinion* in order to aid the jury or trier of fact. The trier of fact must make the ultimate decision on this issue. See *Hill* v. *State* (1969), 252 Ind. 601, 251 N.E.2d 429. The reports are not accepted by the expert testifying as true facts but are examined by him to provide an aid in diagnosis.

'Thus, where, as here, an expert witness bases his conclusion as to the defendant's sanity on reports of other physicians, it is entirely proper that the jury know which opinions he credited, which he rejected, and why. As long as the jury is instructed that such hearsay opinions are being introduced solely to test the credibility of the expert witness and not to prove the truth of the matters contained therein, the use of such opinion for that limited purpose

does not violate the confrontation clause of the Sixth Amendment.' *United States* v. *Harper* (5th Cir. 1971), 450 F.2d 1032, 1037.

\* \* \*

In the realm of expert testimony, it is obviously preferable to have the opinion derived from a distillation of as much reliable information as possible. This results in a more intelligent opinion because an opinion is only as good as the data upon which it is based. Any alleged lack of reliability can be brought out on cross-examination, and, as long as the expert is otherwise qualified, should go to weight of the evidence and not its competency. The fact that a psychiatric expert bases his opinion in part on reports from a state mental hospital does not make the testimony and opinion of the expert excludable."

Inasmuch as the special plea of insanity of the defendant-appellant at the time he is alleged to have committed the crime is his sole defense, all pertinent, admissible evidence to prove or which would tend to prove that he was insane at that time should have been permitted to have gone to the jury for its consideration, as it was for the jury to determine from all the evidence and not for the expert witness to determine whether the defendant-appellant was insane. The jury, in order to make an intelligent determination of defendant-appellant's sanity or insanity was entitled to have the benefit of Dr. Schmits' evidence. The State cannot be heard to complain that Dr. Schmits' opinion was, in part, based on hearsay as the State had the right to cross examine the doctor at any depth it might have desired as to the evidence he received from the defendant-appellant's relatives and by cross examination to determine how he considered and weighed it in his determination as to the sanity or insanity of the defendant-appellant.

The court, by sustaining the objection, erroneously precluded the defendant from fully presenting the theory of his case to the jury.

This court cannot now determine that the error committed was harmless for the reason that for us to do so would

necessarily be done after we had weighed the evidence, which is not our prerogative.

For the above and foregoing reasons we are of the opinion that the court committed reversible error.

Finding reversible error, we are not required to write on other alleged errors.

This cause is now reversed and remanded to the trial court for a new trial.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 308 N.E.2d 710.