**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Alonzo BUSH, Defendant and Appellant.**

**No. 12052.**

Supreme Court of South Dakota.

Nov. 30, 1977.

John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and respondent, William J. Janklow, Atty. Gen., Pierre, on the brief.

Ramon A. Roubideaux, Rapid City, for defendant and appellant.

HERTZ, Circuit Judge.

On May 3, 1975, the defendant, Alonzo Bush, shot and killed Robert C. Williams, a Rapid City businessman. When charged with the offense, defendant entered pleas of not guilty and not guilty by reason of mental illness. On August 27, 1976, the jury returned a verdict of guilty of murder as charged in the information. From the judgment and sentence entered on the jury's verdict, the defendant appeals.

The defendant, Alonzo Bush, an American Indian, was 42 years of age at the time of the shooting. He had an 8th grade education, served for three years in the Armed Forces of the United States, and, when employed, worked as a farm or ranch laborer.

In 1973 he sustained a serious head injury and was treated at Los Angeles General Hospital. Since that time, defendant has been in and out of various V.A. Hospitals in California, Minnesota, and South Dakota being treated for physical, mental, and alcoholic-related illnesses.

In the Spring of 1974, defendant was examined and surgically treated by Dr. Richard Scott Gregory, a neurosurgeon at the Veterans Administration Facilities in Minneapolis, Minnesota. Dr. Gregory's deposition reveals that defendant had a previous skull operation in Los Angeles in 1973, and that the surgery performed by him was to replace the bone flap on the skull and substitute a plastic covering to keep the brain from being depressed. Dr. Gregory declared the surgery successful. He further stated that in his opinion defendant was mentally ill at the time of his surgery and treatment by reason of his paranoid

behavior. Defendant at one time snatched a pair of scissors and assumed an apparent defensive stance while being treated by Dr. Gregory. On cross-examination, Dr. Gregory admitted that simply because a person exhibits paranoid behavior does not mean he is legally mentally ill. Defendant was discharged from the hospital on May 10, 1974, at which time Dr. Gregory noted in his records that defendant would require a six-week period of convalescence and then could return to full employment, and that defendant was not to be held for psychiatric treatment. Dr. Gregory also indicated that defendant's consumption of alcohol could provide sufficient stress to cause him to experience a psychotic episode.

The defendant's sister, Clara Comes Killing, testified that after the surgery by Dr. Gregory, defendant came to live with her for a time, and that he suffered convulsive episodes during his stay with her.

Defendant was admitted to the Veterans Hospital at Fort Meade on April 3, 1975.

Dr. Albert E. Uecker, a Clinical Psychologist at the Fort Meade Veterans Hospital, testified he examined defendant on April 8, 1975, and "found evidence of brain damage."

The defendant was also at that time seen by Dr. William D. Trumpe, Staff Psychiatrist at the hospital. The testimony of Dr. Trumpe and other experts will be alluded to later. Defendant was discharged on May 2, 1975.

On May 3, 1975, the defendant entered the Bob Williams' Sewing Center, located at 617 Main Street in Rapid City, South Dakota, and asked directions to the Bronco Bar. After being given directions, defendant left the Sewing Center, but returned shortly thereafter and inquired of Cliff Truesdell, Bob Williams and Bernard Effenberger, who were standing in front of the Sewing Center, as to whether or not they "liked Indians."

Defendant then entered into a somewhat heated discussion with Bob Williams, culminating in a push or shove from Mr. Williams. The defendant "stumbled back about twelve feet and sat down right by the parking meter there."

The defendant then proceeded a short distance down the street where he met a Frieda Johnson. Mrs. Johnson testified that defendant said to her, "That white man tried to kill me." Defendant then started back to Mr. Williams. Mr. Williams told defendant to "move on." Defendant stated, "I am with the F.B.I." He then pulled a small caliber gun from his waist and was heard to say, "Now I am going to kill you." The defendant then fired five or six shots, one of which entered the victim's left temple and another hit the victim's arm. Mr. Williams died as a result of the head wound.

The defendant then ran up the street to Woolworth's Department Store, which was just two stores away from the Bob Williams' Sewing Center. The run of defendant was variously described as "rapidly," "fast," a "jog," or a "medium run."

Police Officer Carter appeared within minutes after the shooting, entered the Woolworth Store and arrested the defendant without incident.

The testimony was somewhat divided on whether the defendant was or was not intoxicated at the time of the shooting. The issue of defendant's intoxication will be dealt with later in this opinion.

The defendant, by this appeal, urges error by the trial court as follows:

(1) That the trial court erred in failing to direct a verdict of acquittal for the reasons that reasonable doubt as to the sanity of the defendant appeared as a matter of law; and that the State failed to prove the sanity of the defendant beyond a reasonable doubt.

(2) That the trial court erred in admitting the testimony of Dr. Phillip Stack, a Clinical Psychologist, in that Dr. Stack was not qualified to give an opinion as to whether defendant knew the difference between right and wrong at the time Dr. Stack examined him.

(3) That the trial court erred in denying defendant's motion for a mistrial and/or new trial on the grounds of prejudicial misconduct of the State's Attorney regarding previous felony convictions of the defendant.

(4) That the trial court erred by giving instructions No. 10 and 11 and pertaining to voluntary intoxication. That the giving of these instructions tended to create conflict and misunderstanding by the jury, since expert testimony indicated that intoxication of the defendant would have a significant bearing on the mental illness of the defendant at the time of the offense.

## I

THAT THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT OF ACQUITTAL FOR THE REASONS THAT REASONABLE DOUBT AS TO THE SANITY OF THE DEFENDANT APPEARED AS A MATTER OF LAW; AND THAT THE STATE FAILED TO PROVE THE SANITY OF THE DEFENDANT BEYOND A REASONABLE DOUBT

■ In order to determine the validity of defendant's claimed error stated above, it is necessary to examine the testimony regarding the mental illness issue.

The defendant testified that he had no recollection of the events which occurred in front of the Bob Williams' Sewing Center on May 3, 1975, at which time Mr. Williams was killed. He relates that he was released from the Fort Meade Veterans Hospital on May 2, 1975; that he obtained a ride to Rapid City; that he had no recollection as to where he slept on the night of May 2, or May 3, 1975; that he did "some" drinking; that he remembered drinking something in the morning of May 3rd; that he then got sick, sat down, and "don't know nothing between anything after that"; that the next thing he remembers, he was in jail.

The defendant, in support of his claim of mental illness at the time of the act, called a number of expert witnesses.

Dr. Gregory's deposition disclosed the 1973 skull surgery in Los Angeles General Hospital, the subsequent skull flap surgery by himself in Minneapolis, Minnesota, in the spring of 1974. Dr. Gregory testified that defendant was, in his opinion, mentally ill at the time of the surgery and later admitted that defendant, after a period of convalescence, could return to work. Dr. Gregory also indicated that the use of alcohol by defendant could provide the stress sufficient to cause defendant to experience a psychotic episode.

Defendant then called Dr. J. Lee Dyer, who was Chief of Psychiatry at the Hot Springs Veterans Hospital. Dr. Dyer testified at the trial that he saw the defendant "a year or two ago;" that he had some type of head injury; that he had a long history of alcohol abuse; that he acted "reasonably normal once he was sobered up;" that he was paranoid during times of intoxication. He found defendant psychotic at times and nonpsychotic at other times. That he was psychotic only after drinking excessively, and if not drinking, he was nonpsychotic. Defendant was constantly warned not to drink because of this. The hypothetical question was then put to Dr. Dyer, including the fact assumption that defendant was intoxicated at the time of the shooting. Dr. Dyer refused to give any opinion as to the mental condition of the defendant on May 3, 1975.

Dr. Albert E. Uecker, a Clinical Psychologist at Fort Meade Veterans Hospital, then testified that he had examined defendant on April 8, 1975, some five days after he was admitted for treatment and stated only that "I found evidence of brain damage."

Defendant's primary expert witness was Dr. Donald W. Burnap, a physician and psychiatrist practicing in Rapid City, South Dakota. Dr. Burnap saw the defendant three times, once on January 29, 1976, again on March 8, 1976, and the last time on March 29, 1976. The diagnosis was that the defendant had a paranoid personality disorder, and that alcohol would contribute to that condition. In response to the hypo-

thetical question, including the assumption that defendant was intoxicated at the time of the act, Dr. Burnap stated that in his opinion the defendant did not then know right from wrong and, therefore, could not appreciate the wrongfulness of his acts. Dr. Burnap later in his direct testimony, in response to the question, "Would we call that a psychotic episode?", stated, "On that question, if you were to poll psychiatrists, you would get differing opinions, most psychiatrists would say he was not psychotic." Dr. Burnap further testified that defendant was well aware of the reason for the interviews with him and that there was a possibility that defendant was deceiving him by the responses he made to his questions.

The state's first witness, in response to the mental illness issue raised by defendant, was Dr. William D. Trumpe, the Staff Psychiatrist at the Veterans Administration Hospital located at Fort Meade, South Dakota. Dr. Trumpe was the psychiatrist assigned to the Alcohol Treatment Program into which the defendant was admitted on April 3, 1975. Dr. Trumpe interviewed the defendant on April 28, 1975, preparatory to discharge. Dr. Trumpe testified that he first reviewed all of the records kept by his staff, then interviewed the defendant for approximately twenty to twenty-five minutes. The diagnosis was that defendant suffered from alcohol addiction and a nonpsychotic organic brain syndrome. Dr. Trumpe further stated that at this time, his behavior was normal and the defendant was ready for discharge on May 2, 1975. In response to the hypothetical question from the state's attorney, including the fact assumption that defendant was not intoxicated, Dr. Trumpe was of the opinion that defendant knew the difference between right and wrong at the time of his discharge on May 2, 1975, as well as at the time of the shooting at about 3 p.m. on May 3, 1975.

Dr. Boleslaw Lebkowski, Staff Psychiatrist at the Human Services Center, saw defendant five or six times between November 4, 1975, and December 9, 1975. Dr. Lebkowski testified that because of defendant's previous head injury, he had increased sensitivity to alcohol with no apparent psychotic symptoms. Dr. Lebkowski stated that in his opinion defendant knew the difference between right and wrong at the time of the interview, and, assuming defendant was not intoxicated, it was his opinion that defendant knew the difference between right and wrong at the time of the shooting on May 3, 1975. On cross-examination, Dr. Lebkowski stated that if it was assumed that defendant was intoxicated, he would then not know the wrongfulness of his acts.

Dr. Phillip Stack, a Clinical Psychologist at the Human Services Center, with twenty years in the profession, then testified that he had daily contact with the defendant from November 24, 1975, to his discharge on December 9, 1975. Based on his clinical experience, the doctor was permitted to give an opinion as to the mental condition of the defendant at the time of his discharge, which was that defendant could distinguish between right and wrong at that time. By virtue of the defendant's objection, sustained by the trial court, Dr. Stack was not permitted to give his opinion as to defendant's mental state at the time of the act (May 3, 1975).

The last of the state's witnesses, Dr. Costas Hercules, a psychiatrist, resident in Rapid City, South Dakota, testified that he saw defendant on August 15, 1975, and on September 9, 1975. Dr. Hercules diagnosed defendant as having "no psychotic psychiatric diagnosis," but that he "had a severe personality disorder, severe character disorder, and alcoholism of a chronic excessive nature." The doctor was of the opinion that the defendant was trying to "con" him. Based upon the two examinations, together with a complete review of defendant's Veterans Administration hospitalization records, it was Dr. Hercules' opinion that the defendant could distinguish between right and wrong at the time he saw him in August and September of 1975. After the hypothetical question was posed by the state, including the fact assumption that defendant was not intoxicated, Dr. Hercules simply replied, "I can't state anything with

medical certainty under those circumstances", admitting that psychiatry is not an exact science.

At this juncture, it is well to remember the limitation of the reviewing power of this Court where the verdict of the trial court is questioned on appeal. In *State v. Nelson*, 80 S.D. 574, 129 N.W.2d 54 (1964), we said:

> "When the state has introduced evidence upon which, if believed by a jury, they may reasonably find the defendant guilty of the crime charged, the state has made out a prima facie case, and the jury, not the judge, ought to pass on it."

To the same effect is *State v. Anderberg*, S.D., 228 N.W.2d 631 (1975).

It is obvious that there is a clear conflict in the evidence concerning defendant's intoxication and mental state at the time of the act. While the testimony relative to defendant's intoxication, other than defendant's own version, has not been here discussed in detail, it is sufficient to note that there was some evidence for and against the issue of intoxication, but again, that was an issue to be resolved by the jury from all of the evidence and circumstances in the case.

The rule requiring the prosecution to prove sanity beyond a reasonable doubt where mental illness is an issue, has been held to impose no general prohibition against conviction on conflicting evidence respecting sanity. 17 A.L.R.3d 177.

■ In other words, the mere fact that there was conflicting evidence on the issue of mental illness in this case, does not militate against a finding by the jury that sanity of the defendant has been established beyond a reasonable doubt. In *Jones v. United States*, 365 U.S. 851, 81 S.Ct. 816, 5 L.Ed.2d 816, the court found no error where diametrically opposite opinions of two psychiatrists respecting defendant's mental capacity were presented in evidence, the court concluding that which of the two should be believed was the ultimate function of the fact finder.

This same issue was raised in *State v. Graves*, 83 S.D. 600, 608, 163 N.W.2d 542, 547 (1968), where this Court said:

> It was a question for the jury to give such weight to the experts' opinions as the foundations for those opinions and other facts justified. * * * Generally the testimony of such experts is not conclusive on the jury; it was entitled to place whatever weight it chose upon such evidence as the opinions were dependent on the facts supporting the testimony. The jury could consider it with all other testimony and evidence. (citations omitted).

See also 31 Am.Jur.2d, Expert and Opinion Evidence, §§ 185, 186.

The trial court was correct in submitting the issue of mental illness of the defendant to the jury. The jury's verdict resolved the conflicting evidence against the defendant on the intoxication issue, as well as his mental capacity at the time of the act. Under this record, the jury's verdict should not be disturbed.

II

THAT THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF DR. PHILLIP STACK, A CLINICAL PSYCHOLOGIST

■ Dr. Stack was permitted to give his opinion only as to defendant's mental state at the time of his examination in November and December of 1975. He was prevented from expressing an opinion as to defendant's mental condition at the time of the act. Considering Dr. Stack's twenty years in the profession, his clinical experience, and his daily contact with defendant, he was qualified to give his opinion as to the mental state of the defendant at that time. The worth and weight of such testimony is ultimately for the jury. There is authority for admitting psychologists' opinions. See *Jenkins v. United States*, 307 F.2d 637 (1962). In any event, even if determined to be error, the error was harmless. (SDCL 23-1-2).

## III

## MISCONDUCT OF THE STATE'S ATTORNEY

At the trial, and upon cross-examination, the defendant was asked:

Q All right, now, Mr. Bush, you have been convicted of felonies before, have you not?

A Well, yes.

Then followed questions, without objection from defendant, concerning the nature of these felonies. It is apparent that the defendant could not recall the correct number or nature of the felonies. At this point, the state's attorney had marked State's Exhibits No. 7 and 8, after which he addressed the court as follows:

Your Honor, the State has had marked State's Exhibits No. 7 and 8, which are certified copies of judgments entered in the Superior Court of the State of California in and for the County of Los Angeles in regard to Alonzo Bush, one reading that he was found guilty of the crime of burglary * * *.

At which point counsel for defendant made his first objection contending that it was improper for the state to read from the exhibits before it was introduced into evidence. The trial court immediately admonished the jury not to consider the state's attorney's remarks, nor the exhibits, as evidence in the case. Following that, the court took a recess, at which time the court advised counsel that it was not certain defendant had denied being convicted of any felonies, and that the state would be permitted to clarify this. The next day the state asked the following questions:

Q All right. Mr. Bush, will you tell me whether or not you have been convicted of any felonies in the past?

A Yes.

Q And can you tell me what those felonies are?

At which point counsel for defendant objected and was overruled by the court. Then followed questions and answers, without further objections, which attempted to define the nature of the felony.

It is apparent that defendant admitted that he was a previously convicted felon. The difficulty arose when the State attempted to ascertain the nature of those convictions. In this state, when a defendant chooses to testify, he may be impeached by cross-examination by showing his conviction of a felony. The extent to which a prior conviction impeaches the defendant's credibility depends upon nature of the felony involved in the conviction, and the state may bring out the name and nature of the crime, but not its details and incidents. *State v. Van Beek*, 87 S.D. 517, 211 N.W.2d 355 (1973). It would appear that the state was within the rule laid down in *Van Beek*. Beyond that, it should be noted that Exhibits 7 and 8 were never admitted into evidence and the jury had been immediately admonished to disregard remarks of counsel for the state, as well as the exhibits themselves. In any event, the error, if any, was harmless. SDCL 23-1-2; *State v. Ballard*, 72 S.D. 293, 33 N.W.2d 339 (1948); *State v. Reddington*, 80 S.D. 390, 125 N.W.2d 58 (1963).

## IV

## THE COURT ERRED IN ITS INSTRUCTIONS, RE INTOXICATION

The court gave instructions No. 10 and 11, which in essence dealt with intoxication and its possible effect on the defendant, and the specific intent required to find the defendant guilty of murder.

The defendant took exception to these two instructions and now contends that the giving of these instructions tended to confuse the real issue before the jury, that being the effect of defendant's intoxication, if the jury should so find, upon the mental condition of the defendant at the time of the act. It will be recalled that most of the experts who testified, stated that the consumption of alcohol by the defendant, sufficient to the point where he became intoxicated, would have a significant bearing on the mental illness of the defendant at the time of the act.

While defendant did not propose an instruction in this regard, he, nevertheless, contends it was reversible error for the court to give instructions No. 10 and 11 and to fail to instruct on the effect of defendant's intoxication in the context of the expert testimony.

SDCL 23–45–1 requires the court:

In charging the jury, the court must state to them all matters of law which it deems necessary for their information in giving their verdict, and it must inform the jury that they are the exclusive judges of all questions of fact.

This court has said that under this section it is discretionary with the court where no written requests for instructions are made, to determine what, if any, instructions he will give in relation to the evidence in the case. *State v. Flack*, 77 S.D. 176, 89 N.W.2d 30 (1958); *State v. Nelson, supra.*

■ Where instructions given are applicable to the evidence so far as they go, and they set forth with reasonable fullness the general principles applicable to the case, or to a particular issue, the party desiring further, fuller, or more particular or specific instructions should request them. In the absence of such request, there is no reversible error in the failure to give further instructions. 75 Am.Jur.2d, Trial, § 577. An exception to the foregoing rule is when the matter not instructed on was fundamental to the case, which this court holds was not the situation here.

■ In the instant case and considering all of the testimony, we think the court properly instructed the jury concerning the effect of intoxication upon the criminal liability of the defendant, and that the giving of instructions No. 10 and 11 was not error. After all, the defendant had pleaded not guilty and not guilty by reason of mental illness. The jury was entitled to consider the intoxication or nonintoxication of the defendant in order to reach a determination as to whether or not the defendant had the required specific intent to commit the crime of murder. Had the jury found that defendant was so intoxicated so as to prevent him from forming the specific intent, it could have found the defendant not guilty.

■ Nor was it error for trial court to fail to instruct concerning alcohol and its possible contribution to defendant's mental condition at the time of the act. Counsel for defendant in his closing argument, strongly urged the jury to remember the testimony of the various experts and what they had said concerning defendant and the stress of alcohol upon his mental condition. The jury, of course, is presumed to have recalled all of such evidence during its deliberations.

In the end, the jury resolved the intoxication issue and the mental illness issue against the defendant. By their verdict they determined that defendant was not intoxicated to the point where he was unable to form the specific intent to commit the crime, and further, that he was not intoxicated to the point where it would have been a telling factor in his mental condition at the time of the act.

In our view, the evidence in this case was legally sufficient to support the verdict of the jury.

The conviction of the defendant must therefore be affirmed.

WOLLMAN and MORGAN, JJ., concur.

DUNN, C. J., and PORTER, J., concur specially.

HERTZ, Circuit Judge, sitting for ZASTROW, J., disqualified.

DUNN, Chief Justice (concurring specially).

I believe the issue of the propriety of the instructions dealing with intoxication was so fundamental to the defense that the failure to propose an instruction should not prevent the issue from being raised on appeal. 75 Am.Jur.2d, Trial, § 578. The objections made by the defense counsel were sufficient to preserve the issue on appeal.

Even though the issue was properly raised, I concur in the affirmance of the conviction. The recent cases indicate that insanity resulting from voluntary intoxica-

tion by one who has been warned not to drink is not an insanity defense but must be accepted, if at all, as an exception to the general rule that voluntary intoxication is not a defense to a crime. *Kane v. United States*, 1969, 9 Cir., 399 F.2d 730; *United States v. Jewett*, 1971, 8 Cir., 438 F.2d 495. The only exception to the general rule now recognized by the courts is that intoxication can be considered in determining whether a defendant had the requisite specific intent to commit the crime, and the jury was properly instructed on that issue. The defendant was not entitled to a special instruction on temporary insanity resulting from intoxication in light of the fact that he had been warned not to drink and voluntarily chose to do so.

I am authorized to state that Justice Porter joins in this special concurrence.