**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Manuel Carlos GALLEGOS, Defendant and Appellant.**

No. 13391.

Supreme Court of South Dakota.

Argued Jan. 10, 1982.

Decided March 3, 1982.

---

Jon R. Erickson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Roberta Jean Earley, Spearfish, for defendant and appellant.

DUNN, Justice.

Appellant Manuel Gallegos appeals from a jury verdict finding him guilty of the crime of aggravated assault. We affirm.

During the afternoon of August 24, 1980, appellant attended a picnic which was sponsored by his employer. After leaving the picnic, he went to the hospital where his wife, Mrs. Gallegos, was employed. While Mrs. Gallegos was driving them home, she and appellant argued and appellant hit her. She stopped the car and attempted to flee. Appellant held her shoulder, but Mrs. Gallegos escaped from the car and ran across the street. Felix Carbajal was in his car nearby and observed this behavior. Carbajal stopped his car across the street and called the police. Meanwhile, appellant got out of the car, tried to lift it up, slipped, and rolled under the car.

Officer John Wainman and patrolman Dale Bruce arrived at the scene and saw appellant lying underneath his car. They approached the car and leaned over to help pull appellant out from under the car. Suddenly, appellant pulled out a knife and waved it back and forth toward Wainman. Wainman and Bruce jumped back to avoid being stabbed. Carbajal instructed appellant in Spanish to lay the knife down and appellant complied. Wainman secured the knife.

At trial, appellant pled not guilty and not guilty by reason of insanity. He introduced medical testimony of three physicians in support of his claim of mental illness at the time of the act. The State rebutted this evidence with the testimony of Dr. Ronald D. Franks, who stated that appellant was sane at the time of the incident.

■ Appellant contends that the rebuttal testimony of the State's expert witness, Dr. Franks, should have been excluded because it was based in part on the results of psychological tests taken by his assistant which were not admitted into evidence and his interview with Mrs. Gallegos which was not admissible under the spousal immunity doctrine. Appellant also contends that Dr. Franks should not have been allowed to refer to the content of his interviews with Wainman, Carbajal and Dr. Fahrni since they had previously testified and Dr. Franks' testimony would be repetitive. We disagree. Dr. Franks, a physician and psychiatrist on the faculty at the University of Colorado School of Medicine, testified that he diagnosed Gallegos as sane at the time of the alleged offense and not suffering from a mental illness. The State asked Dr. Franks to specify the data on which his opinions were based. Dr. Franks then described in detail appellant's past history, the results of psychological tests taken by his assistant, and his analysis of personal interviews conducted with appellant, Mrs. Gallegos, Wainman, Carbajal and Dr. Fahrni.

SDCL 19-15-4 provides that "[a]n expert witness may be required, on direct or cross-examination, to specify the data on which his opinions or inferences are based." These facts need not be admissible in evidence, if they are of a type reasonably relied upon by experts in the particular field in forming opinions upon the subject.

SDCL 19–15–3; *State v. Best*, 89 S.D. 227, 232 N.W.2d 447 (1975).

In *State v. Best, supra,* we held that the opinion testimony of an expert was admissible even though it was based, in part, upon reports of others not in evidence but customarily relied upon by an expert in the practice of his profession. Here, Dr. Franks personally observed appellant for four hours. His diagnosis stems not only from the report resulting from his assistant, but also from his personal observations. "Practical necessity also demands that the physician rely on reports and tests made by others." 89 S.D. at 241, 232 N.W.2d at 455. Medical records compiled by psychological associates are generally relied upon by psychiatrists to form opinions and Dr. Franks' testimony should not be excluded because of his reliance on these test results.

Dr. Franks also relied on information he received during an interview with Mrs. Gallegos. In *Henderson v. State*, 159 Ind. App. 621, 308 N.E.2d 710 (1974), the Court of Appeals of Indiana held that an expert could testify as to his analysis of his interview with a defendant's family for the purpose of clarifying and putting into perspective his ultimate conclusion regarding the defendant's sanity. The court further stated that the opposing party "had the right to cross examine the doctor at any depth it might have desired as to the evidence he received from the defendant-appellant's relatives and by cross examination to determine how he considered and weighed it in his determination as to the sanity or insanity of the defendant-appellant." 159 Ind. App. at 626, 308 N.E.2d at 713. We agree with this analysis and find that it was not error for the trial court to admit Dr. Franks' testimony into evidence on the issue of sanity.

■ While testifying, Dr. Franks also stated that he relied on information received from his interviews with Wainman, Carbajal and Dr. Fahrni. Under SDCL 19–

15–4, it was necessary for Dr. Franks to specify the data on which his opinion was based. Unless he repeated that portion of the interviews upon which he relied, the jury could not determine the weight to be given his testimony. The trial court did not err in admitting this testimony into evidence.*

■ Count II of the information charges that appellant "attempted by physical menace with a knife to put John Wainman in fear of eminent [sic] serious bodily harm ..." The judge's charge to the jury stated that appellant did "attempt by physical menace with a dangerous weapon to put another person in fear of eminent [sic] bodily harm ...." Because of the disparity between the information and the judge's charge to the jury, appellant contends that he was not convicted of the crime charged in the information. We disagree.

Since this issue was not raised at trial, appellant relies on the plain error rule. SDCL 23A–44–15 provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." We apply the plain error rule cautiously and only in exceptional circumstances. *State v. Vogel*, 315 N.W.2d 321 (S.D.1982); *State v. Brammer*, 304 N.W.2d 111 (S.D.1981).

We do not believe that the circumstances herein rise to the level of plain error. Jury instruction number 15 sets forth the essential elements of Count II as: "That the Defendant attempted by physical menace to put John Wainman in fear of eminent [sic] serious bodily harm." This instruction also specified that the State must prove these elements beyond a reasonable doubt before the jury could return a guilty verdict. These elements are identical to the elements of the crime charged in the information. The jury instructions considered as a whole adequately set forth the applicable law, and appellant has not been prejudiced. *State v. Westphal*, 273 N.W.2d 155 (S.D. 1978).

*Dr. Franks' testimony regarding statements made by appellant during his psychological interview indicated that appellant claimed that he did not remember the alleged incident.

Therefore, SDCL 23A–10–4 is not applicable, because appellant did not make a statement during his examination that was admitted in evidence against him on the issue of guilt.

■ Appellant contends that the trial court erred in refusing to receive in evidence the testimony of one juror who would have stated that appellant was found guilty of the crime alleged in the judge's charge to the jury rather than the crime charged in the information. We disagree. SDCL 19–14–7 prohibits the trial court from receiving in evidence a juror's testimony regarding "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith . . . ." The statute does allow a juror's testimony on the question of whether extraneous prejudicial information was improperly called to the jury's attention or whether outside, influences improperly affected a juror.

■ The jury's understanding of the trial court's instructions and charge is a matter that inheres in the verdict and cannot be classified as extraneous prejudicial information which was improperly called to the jury's attention. *Long v. Gilchrist,* 251 Iowa 1294, 105 N.W.2d 82 (1960); *Lambertus v. Buckley,* 206 Neb. 440, 293 N.W.2d 110 (1980). After a jury has been discharged, the testimony of a juror may not be received to impeach a jury verdict on grounds which inhere in the verdict itself. *Bergemann v. Mut. Service Ins. Co.,* Minn., 270 N.W.2d 107 (1978). The trial court was correct in refusing to allow the juror to testify.

■ Appellant contends that the trial court erred in not granting his motion for a directed verdict of acquittal because the State failed to introduce sufficient evidence to prove the sanity of appellant beyond a reasonable doubt. We disagree. When ruling on a motion for directed verdict of acquittal, the trial court must consider the evidence in the light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences in their favor. *State v. Vogel, supra.* A motion for directed verdict of acquittal is properly denied if the State has introduced sufficient evidence to find the defendant guilty of the crime charged, if the evidence is believed by the jury. *State v. Miller,* 313 N.W.2d 460 (S.D.1981); *State v. Myott,* 246 N.W.2d 786 (S.D.1976).

■ During the State's case-in-chief, Wainman testified that appellant appeared to be "under the influence of something because of his actions" and Bruce characterized appellant as "staring mostly" and "irrational." This testimony is not sufficient to raise the issue of insanity, and therefore, it was not necessary for the State in the first instance to prove the sanity of the accused. *State v. Kindvall,* 86 S.D. 91, 191 N.W.2d 289 (1971); *State v. Waugh,* 80 S.D. 503, 127 N.W.2d 429 (1964).

Appellant, in support of his claim of mental illness at the time of the act, introduced testimony from a number of medical witnesses. Dr. Donald W. Burnap, a physician and psychiatrist practicing in Rapid City, South Dakota, saw appellant once on November 4, 1980 for a one-hour interview. He did not interview appellant's wife or other witnesses prior to making his diagnosis. His diagnosis indicated that appellant was suffering from complex partial seizures, and that alcohol could precipitate a seizure. Dr. Burnap stated that at the time of the alleged incident, appellant was not in conscious contact with his surroundings and was not able to make a conscious decision.

Dr. John H. Fahrni is employed with the psychiatric service at the Veteran's Hospital in Ft. Meade, South Dakota. He does not have a degree in psychiatry. Dr. Fahrni examined appellant on August 24, 1980 just after the assault. He stated that he thought appellant was suffering from an acute schizophrenic breakdown and alcohol intoxication.

Dr. Thomas Mervin, a physician at the Veteran's Hospital in Ft. Meade, examined appellant one day prior to trial. Dr. Mervin does not have a psychiatric degree. He testified that appellant was carried in on a stretcher in restraints allegedly suffering from another seizure. Dr. Mervin did not diagnose the case at the time of admission.

Appellant was discharged about two hours later after he calmed down.

The State called one witness, Dr. Franks, in response to the mental illness issue raised by appellant. Dr. Franks' psychiatrist performed a series of psychological tests on appellant for three hours and then Dr. Franks interviewed appellant for four hours on October 21, 1980. He also personally interviewed Mrs. Gallegos, Carbajal, Wainman and Dr. Fahrni. Dr. Franks testified that he was familiar with the legal standard of mental illness in South Dakota and diagnosed appellant as having no psychotic making or severe mental illness and as sane at the time of the alleged offense. He also stated that the facts surrounding the incident indicated that appellant knew right from wrong at the time of the assault.

The record indicates a conflict in the evidence concerning appellant's mental state at the time of the act. As we stated in *State v. Bush*, 260 N.W.2d 226, 231 (S.D.1977):

> The rule requiring the prosecution to prove sanity beyond a reasonable doubt where mental illness is an issue, has been held to impose no general prohibition against conviction on conflicting evidence respecting sanity. 17 A.L.R.3d 177.

> In other words, the mere fact that there was conflicting evidence on the issue of mental illness in this case, does not militate against a finding by the jury that sanity of the defendant has been established beyond a reasonable doubt.

Dr. Franks' testimony that appellant did not suffer from a severe mental illness and that he knew right from wrong at the time of the alleged incident was a sufficient basis upon which the jury could properly resolve the conflicting evidence against appellant on the insanity issue. It was a question for the finder of fact to determine the weight to be given the expert's opinions as justified by the foundation for those opinions and other facts. *State v. Romero*, 269 N.W.2d 791 (S.D.1978); *State v. Bush, supra; State v. Graves*, 83 S.D. 600, 163 N.W.2d 542 (1968). The evidence submitted by the State was sufficient to establish appellant's sanity beyond a reasonable doubt and the trial court was correct in submitting the issue of mental illness to the jury.

Appellant's final contention is that the evidence presented to the trial court was insufficient to sustain a verdict of guilty. We disagree. In determining the sufficiency of evidence on appeal, we examine whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. *State v. Robb*, 303 N.W.2d 368 (S.D.1981); *State v. Moeller*, 298 N.W.2d 93 (S.D.1980).

Wainman, Bruce and Carbajal testified that appellant was lying under his automobile. While Wainman and Bruce were helping to pull appellant out from underneath his automobile, appellant pulled a knife and waved it in the direction of Wainman. Wainman jumped back to avoid being stabbed. Dr. Franks testified that appellant was legally sane under South Dakota standards during the incident. This evidence is sufficient to support a rational theory of guilt.

We affirm.

All the Justices concur.