457 P.2d 755

**STATE of Arizona, Appellee,**

v.

**Patrick Michael SHANAHAN, Appellant.**

**No. I CA–CR 200.**

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 11, 1969.

Rehearing Denied Sept. 29, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag, Sp. Asst. Atty. Gen., for appellee.

Stephen W. Connors, Phoenix, for appellant.

DONOFRIO, Presiding Judge.

Defendant was charged with three counts arising out of an attack on a sixteen-year-

old girl, (1) Burglary, (2) Rape, and (3) Aggravated Assault. He entered pleas of not guilty, and not guilty by reason of insanity on each count. Pursuant to A.R.S. § 13-1621.01 (Added Laws 1968, Ch. 105, Sec. 2) two trials were set. The first was to consider the issue of guilt, the second the issue of insanity. At the close of the evidence at the first trial, a motion to dismiss the burglary charge was granted. The jury returned a verdict of not guilty as to the crime of rape, and a verdict of guilty as to the crime of aggravated assault. The following day the case proceeded to trial before the same jury on the defense of not guilty by reason of insanity. The jury found the defendant was not insane at the time he committed the offense. A judgment of guilty of aggravated assault was entered October 1, 1968, and the defendant was sentenced to serve not less than two years nor more than three years in the State Prison. Defendant has appealed from the judgment and this is the first case to come before us after the enactment of the new law providing for bifurcated trials where a plea of not guilty by reason of insanity is asserted.

At the trial of the insanity issue the order of proof was simple and without objection. Opening arguments were waived and defendant proceeded by introducing the testimony of Dr. David Steinem, a psychiatrist who had examined defendant three times prior to trial. On direct examination he testified in response to a hypothetical question that in his opinion on the night of the assault the defendant "did not know what he was doing" and "could not distinguish between right and wrong". The State then presented testimony of the police officer who had seen defendant for the first time approximately two hours after the assault. He said that after observing defendant over a three or four-hour period that night that he did not observe any unusual conduct on the part of

the defendant and that in his lay opinion the defendant acted sane. No other witnesses were called.

The defendant argues that under the law once insanity has been brought into issue the State must prove beyond a reasonable doubt that the defendant was sane at the time of committing the act, and that in the instant case the State has failed, as a matter of law, to meet this burden. Defendant bases this contention of the insufficiency of the evidence on three premises. He first urges that under State v. Schantz, 98 Ariz. 200, 403 P.2d 521 (1965), cert. denied, 382 U.S. 1015, 86 S.Ct. 628, 15 L.Ed. 2d 530 (1965), there is an inference arising out of the failure of the State to call expert medical witnesses in rebuttal that the defendant's psychiatric evidence as to insanity is true because uncontradicted. Next he cites Buatte v. United States, 9th Cir., 330 F.2d 342 (1964), in which case it was held by the Court of Appeals that the government's evidence, which consisted essentially of lay testimony, was insufficient as against expert testimony presented by the defendant on the issue of insanity, and that that holding should be controlling in this case. Third, he contends that under the new bifurcated trial procedure it was the State's duty to prove beyond a reasonable doubt by evidence presented solely at the second trial that he was sane at the time of the commission of the offense and that it has failed in this respect.

Because this is a case of first impression under a new statute, we are compelled to delve a little into the history of this type of legislation. In the light of this history and our law we shall endeavor to answer, not necessarily in order, the issues raised by defendant.

The bifurcated trial concept is not novel. For example, it has been used in California since 1927,[1] in Colorado since 1927,[2] in Texas since 1937,[3] and in Louisiana since

1. Cal.Penal Code, § 1026 (1956).

2. Law of March 19, 1927, Ch. 90, (1927). Colo. Laws 296.

3. Law of June 8, 1937, Ch. 466 (1937). Gen. and Special Laws of Tex. 1172.

1928.[4] In the federal system it is a matter of procedural discretion on the part of the trial judge. Holmes v. United States, 124 U.S.App.D.C. 152, 363 F.2d 281 (1966). The attempt to divorce the issue of insanity from that of guilt has presented a procedural and evidentiary hydra, particularly upon the California courts.

As the defendant argues, the heart of the bifurcated trial concept is to isolate the issue of insanity, holding it in abeyance until after the determination of guilt so as to avoid confusion in the minds of the jury, to give notice to the State that the issue will be raised, and also to save time if the jury should find the defendant not guilty. The problem arises by the fact that the new statute on bifurcation specifically states that "The multiple trial concept shall not affect * * * the applicability of § 13–131 * * *.", which section provides that a person can neither be found guilty of a crime without the union or joint operation of act and intent, nor if he is without sound mind to form the requisite intent. The statute provides that all persons are of sound mind who are neither idiots nor lunatics nor *affected with insanity*. The situation which presents a problem is that in the first trial the jury must determine "guilt" as well as the degree of the "crime", yet under A.R.S. § 13–131 there can be no crime and thus no guilt unless the defendant be of sound mind. This is an issue which cannot be answered theoretically until the second trial. In addition, assuming that the test for specific intent (basically a capacity test) is different from the test of insanity (a cognitive test under the M'Naghten rule), where is the line to be drawn between evidence to be admitted and considered at the first trial weighing on the defendant's mental state in forming a specific intent, and evidence to be admitted and considered at the second trial on the defense of insanity? California, carrying the isolation of issues to

an extreme, originally held that no evidence of the defendant's mental state could be admitted at the first trial even if it was presented to prove specific intent. (See Louisell and Hazard, Insanity as a Defense: The Bifurcated Trial, 49 Cal. L.R. 805, for a learned discussion of the California cases). Later, in People v. Wells, 33 Cal.2d 330, 202 P.2d 53 (1949), the rule was established that evidence of mental condition weighing on intent could be admitted at the first trial, but not if it weighed on insanity. Finally, in People v. Gorshen, 51 Cal.2d 716, 336 P.2d 492 (1959), the rule was broadened to the point where any evidence negating capacity to form the requisite intent was admissible even if cotextual to proof of insanity under M'Naghten.

The problem appears in the instant case when the defendant argues that the State's burden of proof on the sanity issue must be satisfied solely by evidence presented at the second trial. We feel defendant misconstrues the nature of the bifurcated trial. Although the statute speaks of two trials, there is in essence one trial on the ultimate issue of criminal guilt or responsibility, with a procedural attempt to control the presentation of evidence and determination of the insanity issue so as to avoid confusion. People v. Leong Fook, 206 Cal. 64, 273 P. 779 (1928); People v. Eggers, 30 Cal.2d 676, 185 P.2d 1 (1947). Thus, we have a statutory preference for the order of trial, with a two-stage determination of criminal responsibility and the option of a single proceeding under A.R.S. § 13–1621.01, subsec. A[5] if good cause for such is shown. There is nothing in the statute, however, that would change the traditional rule in Arizona that the order of proof is entirely within the discretion of the trial judge, Udall, Arizona Law of Evidence, § 4, Page 12 (1960), as long as the judge keeps in mind the preference for separation of issues. We cannot

---

4. Acts of 1928, No. 2, § 1, Articles 261, 267, La.Code of Crim.Proc.

5. "A. In any case where the defense of not guilty by reason of insanity is asserted, two trials shall be set unless good cause for a single trial is shown."

agree with defendant's argument that the State's burden of proof may be satisfied only by evidence presented at the second trial where the same jury was used for both phases. We do not have the transcripts from the first trial as a part of our record and it would be pure speculation to attempt to consider how much testimony concerning the defendant's actions and state of mind was introduced to prove the specific intent required for burglary, apart from the other charges, and how much of it was considered by the jury on the sanity issue. Since the partial record is not sufficient in this matter, we would indulge in the presumption that the trial court's action was correct. Orlando v. Northcutt, 103 Ariz. 298, 441 P.2d 58 (1968); Bryant v. Thunderbird Academy, 103 Ariz. 247, 439 P.2d 818 (1968); Campbell v. Campbell, 9 Ariz.App. 557, 454 P.2d 875 (1969). We do know from the minute entries, however, that the defendant was present throughout the trial and testified. The jury was able to observe defendant's reactions and listen to his testimony. For us to deny the right of the jury to consider such facts in order to categorize issues would be to deny the realities of a trial.

Other reasons also compel us to construe the statute as not requiring a rigid adherence to the conceptual split of the issues. A.R.S. § 13–1621.01, subsec. B [6] provides that "The multiple trial concept shall not affect the traditional burden of proof, * * *". The traditional burden of proof in Arizona starts with a presumption that all persons are sane and ordinarily in a criminal case the prosecution may rely on this presumption. Foster v. State, 37 Ariz. 281, 294 P. 268 (1930). However, once the defense of insanity is placed in issue, it is the State's duty to prove beyond a reasonable doubt that the defendant was legally sane. State v. Schantz, supra. Further, in applying the

*Schantz* rule, insanity will be deemed to be "an issue" once the defendant introduces sufficient evidence to raise a doubt as to his sanity under the rule of M'Naghten. If no such evidence is introduced, the presumption that all men are sane will prevail. When such evidence is introduced, the State may no longer rely upon the presumption but must go forward with the evidence and prove sanity beyond a reasonable doubt. State v. Martin, 102 Ariz. 142, 426 P.2d 639 (1967). We have not been referred to any evidence regarding defendant's insanity at the first trial. From this it seems the ordinary procedure, as was followed in the instant case, is for the defendant to go forward with the evidence at the second trial, at least until he overcomes the presumption of sanity by raising a reasonable doubt as to his sanity. Again we come back to the glaring recognition that there is in essence one trial, and the jury's consideration of the issue of insanity cannot be limited to evidence presented at the second stage where a single jury has been used. To require the State to recall witnesses who testified of defendant's actions on the night in question would be a duplication of time and effort.

Turning now more directly to the quantum of evidence on sanity, defendant has relied on language in State v. Schantz, supra, and Buatte v. United States, supra, in support of his argument that the State fails to meet its burden of proof as a matter of law.

In the *Schantz* case our Supreme Court stated:

> "There is an inference arising out of the failure of the State to call expert medical witnesses in rebuttal that the defendant's evidence as to insanity is true because uncontradicted." State v. Schantz, supra, at pages 213, 214 of the Arizona Reports, at page 530 of 403 P.2d.

6. "B. The first trial shall determine the issue of guilt or innocence and, if appropriate, the degree of the crime. The multiple trial concept shall not affect the traditional burden of proof or the

applicability of § 13–131. At the discretion of the court, the jury may be informed that there may be two trials and what issues will be decided at each."

However, this language was used merely as a background to the court's holding that the State could introduce testimony by its expert witness that the defendant refused to submit to examination as evidence to rebut that inference. The inference was not said to act as a conclusive presumption as the defendant would lead us to believe. On the contrary, it is settled in Arizona that juries are not bound by the opinions of expert witnesses, even where the State has not presented positive expert testimony of legal sanity. State v. Cano, 103 Ariz. 37, 436 P.2d 586 (1968).

The *Buatte* case relied on by defendant merely held that under the evidence presented in that case the prosecution had not proven sanity beyond a reasonable doubt. State v. Ganster, 102 Ariz. 490, 433 P.2d 620 (1967). The evidence in *Buatte* is easily distinguished from that of the instant case. In the *Buatte* case the defendant had killed a young child and wounded another. At the time several psychiatrists examined him he was suffering from a severe form of mental illness such as to make it difficult for him to distinguish reality from fantasy. Several lapses in memory were found in the defendant and the results of the tests which the doctors used ruled out the probability of defendant's feigning or pretending loss of memory during the criminal act. The doctors found that even before the lapse of memory defendant was suffering from extreme emotional stress. In the opinion of one of the doctors defendant's schizophrenic condition was a chronic one of long standing. Confirming this testimony was the fact that defendant had a record of service both in the Navy and Army showing severe mental impairment. This evidence raised a reasonable doubt as a matter of law where the lay testimony presented by the State concerning the defendant's apparent normal demeanor was not based on his actions immediately prior to or after the crime.

█ In the case at hand the defendant's witness at the insanity trial was a psychiatrist who had examined defendant for the purposes of testifying at the trial. Dr. Steinem testified on direct examination that he examined defendant on three different occasions after the assault. He said that at the time of the examination defendant revealed an emotional instability with many aggressive feelings which he had difficulty controlling. However, he went on to say that his thinking was logical and he was well oriented in all phases, with his intellectual functions intact. Then the witness was presented a hypothetical question which described a fact situation of a young man having taken some drugs, then drinking several cans of malt liquor and beer, then attempting to jump a bush but falling and striking his head, temporarily losing consciousness, and later feeling strange and acting crazy and later assaulting a sixteen-year-old girl, all facts which we presume were in evidence at the first trial. The witness was then asked if in his opinion, under the facts of the hypothetical, could the actor know what he was doing at the time of the assault or distinguish between right and wrong, to which the doctor answered in the negative. Later, on cross-examination, the doctor testified that after examining defendant on the first occasion, and based on a history related to him of the night in question by defendant and his attorney, it was his opinion that the defendant could not distinguish between right and wrong or have known what he was doing at the time of the assault although he believed the defendant had such cognition up to the point of injuring his head in the fall. He further testified that the defendant had no organic brain damage, nor any past history of mental disease nor hospitalization for emotional or mental problems. He did not feel the defendant needed hospitalization at the time of the examination and finally, when the hypothetical above was expanded by the prosecution by facts which we again presume were in evidence, the doctor stated that his opinion would be weakened. The parallel factors between *Buatte* and the

present case clearly show the relative weakness of defendant's position.

It is not the function of an appellate court to retry conflicts in evidence where there is substantial evidence to support a verdict or the findings of a trial court. State v. Owen, 101 Ariz. 156, 416 P.2d 589 (1966); State v. Foggy, 101 Ariz. 459, 420 P.2d 934 (1966). The jury heard all the evidence and in particular that upon which the doctor's hypothetical question was based. The fact that the jury was able to observe the defendant during the trial and listen to his testimony, coupled with the testimony of the police officer, is sufficient to sustain the finding of sanity.

Judgment affirmed.

STEVENS and CAMERON, JJ., concur.