517 F.Supp. 69 (1981)
UNITED STATES of America,
v.
J. D., R. S., and J. S., Defendants.
81 Cr. 0008 (RWS).
United States District Court, S. D. New York.
April 13, 1981.
Amended Opinion June 15, 1981.
John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for United States; Benito Romano, Asst. U. S. Atty., Ruth N. Glushein, Asst. U. S. Atty., New York City, of counsel.
Caesar D. Cirigliano, Federal Defender Services Unit, The Legal Aid Soc., New York City, for defendant R. S.; Jack Lipson, New York City, of counsel.
Theodore Krieger, Westport, Conn., for defendant J. D.
Louis Aidala, New York City, for defendant J. S.

OPINION
SWEET, District Judge.
On January 2, 1981, three youths, the defendants herein, were arrested and charged with having committed acts of juvenile delinquency, in violation of 18 U.S.C. §§ 5031-42. Specifically, the defendants were charged with the attempted robbery of a branch of the Manufacturers Hanover Trust Company located in the Bronx. Six days later, a four-count Juvenile Information was filed charging the defendants with various acts of juvenile delinquency, including conspiracy, attempted bank robbery, carrying of firearms during the commission of a felony and possession of an unregistered firearm in violation of 18 U.S.C. §§ 371, 2113(a), 924(c) and 26 U.S.C. § 5861(d).
The government seeks transfer of these defendants to adult status and permission to proceed against them by criminal indictment.[1] *70 In conjunction with that motion and as a preliminary step toward its consideration and determination, the government seeks an order pursuant to 18 U.S.C. § 5037(c) committing the defendants to the custody of the Attorney General for observation and study by an appropriate agency on an outpatient basis. The object of the proposed study would be "to ascertain as to each defendant his personal traits, his capabilities, his background, any previous delinquency or criminal experience, his present intellectual development and psychological maturity and any mental and physical defect." The agency would be charged with reporting its findings to the government, to defense counsel and to this court, for use in the hearing on and determination of the issues raised by the transfer motion. That motion calls upon this court to make findings on certain factors enumerated by the statute in order to determine whether the requested transfer would be in the "interest of justice." See 18 U.S.C. § 5032. Those factors are:
the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.
Id.
Counsel for all three defendants oppose the government's motion for a commitment order. They argue that the statute under which the motion is made, 18 U.S.C. 5037(c), as the government seeks to have it applied, is unconstitutional because it would compel the defendants to give potentially self-incriminatory testimony. They also challenge the statute governing the transfer proceeding itself, 18 U.S.C. § 5032, arguing, in essence, that it articulates no clear standard to guide the judge in his determination of whether a transfer would be in the interest of justice. That lack, they allege, works a violation of due process.
I am not yet called upon to reach a decision on the transfer motion itself. Because the facts to be developed and arguments to be presented at the hearing on that motion presumably may relate to and clarify the significance of the factors set forth in 18 U.S.C. § 5032, I reserve decision on the due process challenge to that statute until consideration of the transfer motion itself.
However, I am persuaded by some of the arguments of defense counsel pertaining to the Fifth Amendment implications of the government's construction of § 5037(c). Cognizant of my obligation to interpret congressional enactments in a manner consistent with the Constitution when such an interpretation is possible, I conclude that the statute itself is constitutional but that the application sought by the government here would violate the defendants' Fifth Amendment rights. Therefore, although I have decided to grant the government's motion for a commitment order, I am imposing certain limitations on the government's reliance on the defendants as sources of information about themselves, and, specifically, on the government's use of the information that the defendants provide. Those limitations and the reasons for their imposition are set forth below.
*71 The government contends that ordering the defendants to submit to the proposed study would not violate their Fifth Amendment rights. It argues, first, that a transfer proceeding is not a criminal case but an "intermediate step, designed to ascertain how the juvenile should be treated in the interest of justice," United States v. Rombom, 421 F.Supp. 1295, 1298 (S.D.N.Y.1976), and contends that therefore the Fifth Amendment does not apply to this stage of a juvenile action. Second, the Government takes the position that even if the Fifth Amendment does apply, it would not be violated by the proposed study because the compulsion involved would not be used to elicit "incriminatory testimony," as those terms have been interpreted under authorities claimed to be relevant here. The defense disputes both arguments, claiming, in essence, that they are based on fictions.
The government's argument that a transfer proceeding is only an "intermediate step" is beside the point.[2] Its irrelevance to the issue of whether the Fifth Amendment applies to transfer proceedings is revealed by the conclusion of the Supreme Court in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). In Gault, the court ruled that juveniles are entitled to the Fifth Amendment's protection against self-incrimination in juvenile proceedings themselves, despite the non-criminal nature of those proceedings. The court emphasized that substance and not form controls in determining the applicability of the Fifth Amendment to proceedings that are not labeled "criminal," id. at 49-50, 87 S.Ct. at 1455-1456, and found that the Amendment does apply to juvenile proceedings, in part because the defendant's liberty is at stake. The court looked to the purposes of the privilege, and in particular its goal of preventing the state "whether by force or by psychological domination, from overcoming the mind and will of the person under investigation and depriving him of the freedom to decide whether to assist the state in securing his conviction." Id. at 47, 87 S.Ct. at 1454. Both of these grounds support the applicability of the Fifth Amendment to transfer proceedings as well as to juvenile proceedings themselves. The defendants would be open to a far longer period of incarceration if the transfer motion were to be successful than if they were to be proceeded against as juveniles. Their liberty is therefore very much at stake. Withholding Fifth Amendment protection from these defendants during this stage of these proceedings would deprive them of the freedom to choose whether to assist the state. Therefore, under Gault, I find the Fifth Amendment applicable to transfer proceedings under 18 U.S.C. § 5032.
The government's second argument raises more complex problems. Relying on a line of cases rejecting Fifth Amendment challenges to compelled psychiatric examinations in connection with defenses based on mental capacity, see United States v. Baird, 414 F.2d 700 (2d Cir. 1969), cert. denied, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970), and sentencing proceedings, see Hollis v. Smith, 571 F.2d 685 (2d Cir. 1978), the government contends that the statements sought to be elicited from the defendants here are neither "testimonial" nor "incriminating," and that therefore the Fifth Amendment does not block their compulsion. See generally Fisher v. United States, 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976) (Fifth Amendment proscribes "compelling a person to give `testimony' that incriminates him.") This argument requires a review of the rationale behind the holdings of Baird and Hollis.
In Baird, defense counsel introduced psychiatric testimony to the effect that the *72 defendant lacked the mental capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law by reason of a mental disease or defect. As part of that testimony, the defense offered statements made by the defendant to a psychiatrist during the course of a psychiatric interview. It countered a hearsay objection with the argument that the defendant's statements were offered for the purpose of illuminating and providing a foundation for the psychiatrist's diagnosis, rather than for the truth of the matter asserted. That argument was accepted, then turned against the defense when the government moved to have the defendant examined by its own psychiatrist. The court ordered the defendant to submit to such an examination, but conditioned that order with an evidentiary ruling that allowed the government doctor to testify to those statements made by the defendant that related to the doctor's opinion of the defendant's mental capacity, but not to those statements directly relating to the defendant's income tax situation. That ruling was affirmed on appeal. The Second Circuit analogized the defendant's statements, admitted as they were as "verbal acts" and not for their truth, to real or physical evidence, the compelled taking of which is constitutionally permissible. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Subsequent cases have followed Baird. See e. g. United States v. Trapnell, 495 F.2d 22 (2d Cir.), cert. denied, 419 U.S. 851, 95 S.Ct. 93, 42 L.Ed.2d 82 (1974); United States v. Weiser, 428 F.2d 932 (2d Cir. 1969); cert. denied, 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971).
In Hollis, supra, a similar issue arose in the context of a sentencing proceeding. There, the court ordered a convicted defendant to submit to a psychiatric examination in connection with a determination of whether the defendant should be sentenced to a determinate or an indeterminate term. The court rejected a Fifth Amendment challenge to that order, finding that the statements to be elicited from the defendant were neither testimonial nor incriminating. It based its conclusion regarding the non-testimonial aspect of the statements on Baird and similar cases, see, e. g. United States v. Albright, 388 F.2d 719 (4th Cir. 1968), agreeing that, because of their proposed use as a foundation for diagnosis, the statements were to be considered as akin to real or physical evidence and not as communications or testimony. Hollis, supra, at 691. Its conclusion that the statements were not incriminating was also based on their intended use. Because they were not to enter into a determination of guilt or innocence or be utilized as leads to other offenses, the court concluded that these statements were not "incriminating" for Fifth Amendment purposes.
Although Baird, Hollis, and the cases that track them are relevant to the issues presented here, they are not controlling because the scope and purpose of the government's intended inquiry far exceeds the purposes of the inquiries engaged in in those cases. Those cases allow the government to compel statements to be used as verbal acts. Here, however, the government seeks to use the defendants not only as sources of diagnostic tools  "verbal acts"  but as sources of factual information of central importance to the determination of the transfer motion. It seeks information about each defendant's "personal traits, his capabilities, his background, any previous delinquency or criminal experience, his present intellectual development and psychological maturity and any mental and physical defect ...." It appears from the government's papers that it would then seek to use the information supplied by the defendants to supply proof of the factors set forth in 18 U.S.C. § 5032, to be considered by the court in its determination of the transfer motion. Those factors, listed supra p. 70, include not only psychological traits, which, under the rationale of Hollis, Baird and related cases could be established legitimately through use of the defendants' statements as "verbal acts," but also such things as the social backgrounds and prior records of the defendants. As to those factors, the government *73 would rely on the content of the defendants' statements to supply a factual predicate for a favorable disposition of the transfer motion. In other words, it would rely upon those statements for their testimonial significance. That proposed use differentiates this case from Baird and Hollis, and calls for a different result.
Furthermore, unlike the situations presented in Baird, Hollis and related cases in which the courts concluded that the statements were to be used for non-incriminatory purposes, here the statements are sought for a purpose directly relating to criminality. In Baird, the court refused to admit statements tending to show the guilt or innocence of the accused, and thereby sought to avoid the incrimination problem. In Hollis, the court concluded that because the statements were to be used for sentencing and not for a determination of guilt, their intended use was non-incriminatory. In other cases, statements admitted for the purpose of allowing a determination with respect to the defendants sanity were termed non-incriminatory because the issue of sanity was seen as distinct from the issue of guilt or innocence. See, e. g. United States v. Albright, supra. But cf. United States v. Alvarez, 519 F.2d 1036 (3d Cir. 1975) (use of compelled statements to establish sanity, a matter going to guilt or innocence, raises Fifth Amendment problem). In all of the cases just discussed, the term "incriminatory" was used narrowly to mean relating to guilt or innocence. In all of those cases, the defendants were already subject to criminal prosecution. The present situation is different. Here, although it is true that the statements would not be used upon trial to determine the defendants' guilt or innocence, the government would use the defendants' statements to render them liable to criminal prosecution in the first instance. That proposed use calls for a somewhat broader view of the meaning of incrimination, for such use is "incriminatory" in a very practical sense, and a sense of fundamental importance to these defendants. The statute's prohibition against using the defendants' statements in any subsequent criminal proceeding, 18 U.S.C. § 5032, does not negate that incriminatory effect.
Furthermore, unlike cases dealing with various psychological defenses, which turned in part on notions of waiver or estoppel by the defendant who injected psychiatric issues into the litigation, see, e. g., United States v. Baird, supra, the present case presents no waiver question. The government seeks to compel the psychiatric examination; the defendants have raised no psychological defenses, and they oppose the government's application.
I conclude that as to all areas of proposed inquiry with the exception of the defendants' intellectual development, psychological maturity and mental defects, insofar as the government seeks to rely upon the defendants themselves to supply information relevant to the transfer motion, the government seeks to compel incriminatory testimony in violation of the defendants' Fifth Amendment rights. Such use will not be allowed. The commitment order itself, however, will be granted upon the conditions outlined below.
The government is entitled to an order compelling the defendants to submit to psychiatric evaluations designed to assess their psychological maturity and intellectual development and to ascertain whether they have any mental defects. As to all other areas of inquiry set forth in 18 U.S.C. § 5037(c), and all other factors enumerated in 18 U.S.C. § 5032, the government must rely on other investigative resources in marshalling evidence for a hearing on the transfer motion. "[O]ur accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth." Miranda v. Arizona, 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694 (1966).
It is all but inevitable that in the course of any psychiatric evaluations of these defendants, the psychiatrists will inquire into the defendants' social backgrounds, previous *74 delinquency, criminal experience, and other matters. Such inquiry is not prohibited by this opinion. What is prohibited is use of the defendants' statements about those subjects, in this or any subsequent proceeding, as proof of their content, rather than as verbal acts of diagnostic significance in the psychiatrists' evaluations of the defendants' psychological maturity, intellectual development, and possible mental defects. This distinction precludes the use of the defendants' statements for their testimonial significance, and requires the government to rely on other sources of information and proof in the more biographical areas of inquiry.
The government suggests in its papers that as to one of the proposed areas of inquiry, the defendants' "previous delinquency or criminal experience," the relevant records are unavailable to it because of the statute's prohibition against fingerprinting or photographing juvenile defendants without the written consent of the judge. 18 U.S.C. § 5038(d)(1). The government has not applied for court consent to such processing here, nor has such consent been denied. Any argument based on the supposed necessity of relying on the defendants as the sole available sources of the information sought must therefore fail. Cf. United States v. Cohen, 530 F.2d 43, 48 (5th Cir.), cert. denied, 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976) (without compelled psychiatric examination in case in which defense of insanity is raised, the government will lack a satisfactory method of meeting the defendant's proof on the issue of sanity). As to the remaining proposed areas of inquiry, other sources of information must be explored.
The language of the statute is not inconsistent with this determination. 18 U.S.C. § 5037(c) allows the court to order an accused juvenile committed to the custody of the Attorney General for "observation and study by an appropriate agency," and requires that agency to study and report on the enumerated factors. It does not state that the agency is to rely on the juvenile himself for all relevant information, and nothing in the overall statutory scheme requires such an interpretation. § 5032 says nothing about the source or form of proof to be adduced by the government and considered by the court in regard to the factors to be considered on the transfer motion. I therefore reach the conclusions set forth above regarding the permissible scope of the agency's and the prosecutor's use of the juvenile's own statements, in order to construe the statute in a manner consistent with the Constitution.
Finally, in order to safeguard the defendants' Fifth Amendment rights, the government must take stringent steps to ensure that no impermissible use of statements made by these defendants during psychiatric interviews is made. The measures to be taken toward that end properly extend beyond the statute's prohibition against the use of such statements in subsequent criminal prosecutions, see 18 U.S.C. § 5032, for that alone does not adequately protect against Fifth Amendment deprivations. The Government may compel speech for diagnostic use, but it could not force the defendants to supply either incriminatory testimony, see Fisher, supra, or investigative leads, see generally Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (government may not rely on immunized testimony as investigative resource). Therefore, it must not use the statements to be compelled here for those other purposes. In order to ensure that the use of these statements is confined to the constitutional purposes for which they will be compelled, the Government should keep all records pertaining to the psychiatric interviews separate from its other investigatory files, and prevent the use of any of the information obtained during those interviews in the investigation or prosecution of any matters, including the present and all subsequent proceedings, concerning these defendants. Most immediately, these statements must not be used by the agency to which these juveniles are now committed for study in connection with that agency's investigation of the non-psychological factors to be explored. Agency employees charged with those areas of investigation *75 are to have no access to the psychiatric files.[3] The government will have the burden of proving that it has fulfilled this obligation. See id. (to insure that scope of immunity is co-extensive with the scope of Fifth Amendment privilege, prosecution must prove that evidence proposed to be used is derived from a legitimate source wholly independent of the compelled testimony).
Submit order on notice within ten (10) days. This opinion will be sealed, copies will be made available to counsel.
IT IS SO ORDERED.

APPENDIX
On consent of all attorneys, this opinion is being submitted for publication with the defendants' names withheld.
NOTES
[1] The transfer motion is brought pursuant to 18 U.S.C. § 5032, which provides, in pertinent part, as follows:

A juvenile who is alleged to have committed an act of juvenile delinquency and who is not surrendered to State authorities shall be proceeded against under this chapter unless he has requested in writing upon advice of counsel to be proceeded against as an adult, except that, with respect to a juvenile sixteen years and older alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony punishable by a maximum penalty of ten years imprisonment or more, life imprisonment, or death, criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the appropriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice.
[2] Furthermore, although technically accurate, see United States v. Rombom, supra, the Government's position ignores reality. The reality is that the purpose of the proceeding is to determine the fundamentally important question of whether the defendants are to be open to criminal prosecution at all. Thus, though it may not in and of itself be a criminal proceeding, it is "`a preliminary hearing in a criminal case,'" United States v. E.K., 471 F.Supp. 924, 929 (D.Or.1979); and in fact it is "the essential preliminary step in any criminal prosecution of the juvenile." Id. See generally United States v. Hill, 538 F.2d 1072 (4th Cir. 1976) (distinctions between juvenile proceedings and criminal prosecutions).
[3] I make no determination at present as to the necessity of having separate prosecuting attorneys handle the transfer proceeding and any eventual trial.