**STATE of South Dakota, Plaintiff
and Appellee,**

v.

**James L. DEVINE, Defendant
and Appellant.**

**No. 14640–a–JF.**

Supreme Court of South Dakota.

Argued Feb. 5, 1985.

Decided July 31, 1985.

Rehearing Denied Sept. 6, 1985.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Richard L. Bode of Maher, Carter & Bode, Pierre, for defendant and appellant.

FOSHEIM, Chief Justice.

James Devine (Devine) appeals from a jury conviction for second degree burglary, SDCL 22–32–3, and habitual offender, SDCL 22–7–8. We affirm.

Phoebe Bordeaux, Devine's aunt, lived in an apartment at the St. Charles Hotel in Pierre, South Dakota. Michel Delon, the owner and manager of the hotel, occupied an adjoining apartment. Both dwellings overlook the roof of another building. At approximately 1:15 p.m., on November 6, 1983, Mr. Delon observed broken glass and other items on the roof of the adjacent building, which he concluded came from the Bordeaux apartment. He heard noises indicating items were being broken. He went to the Bordeaux apartment and observed the door was open and the interior was in a shambles. Devine was standing in the apartment. After summoning the police, Mr. Delon continued to observe Devine, who remained in the apartment. A police officer and Mr. Delon testified that Devine responded slowly to their questions and that he appeared intoxicated.

Devine entered pleas of not guilty and not guilty by reason of mental illness to the burglary charge. At the request of Devine's counsel, the trial court ordered a psychiatric evaluation. Devine remained at the Yankton, South Dakota Human Services Center for examination from December 1, 1983, to December 23, 1983. Dr. Ulises Pesce interviewed Devine ten times. Devine told Dr. Pesce that he was attempting to find some alternative that would keep him from going to prison. Dr. Pesce found Devine sane and competent to stand trial. Devine then requested an alternative evaluation, which was granted.

Devine was also examined by Dr. Charles Warrender in Pierre, South Dakota. During this interview, Devine related that he had previously made up symptoms of mental illness so that he could be transferred from the Sandstone Federal Penitentiary in Minnesota to the United States Medical Center for federal prisoners in Springfield, Missouri. Dr. Warrender found Devine sane and competent to stand trial, and testified that he possessed an antisocial personality disorder characterized by repeated acts of vandalism, theft and incarceration. Both Drs. Pesce and Warrender were called as state's witnesses and allowed to reveal Devine's statements. The State also called Mr. Lynn Goehring, a psychologist who administered certain tests ordered and considered by Dr. Warrender in his evaluation.

Dr. Aris K. Kargas was called as a defense witness. He had interviewed and frequently observed Devine at the United States Medical Center from August 12, 1982, until March 14, 1983. Devine's treatment at the Center included a psychotic medication and an antidepressant drug. In his discharge recommendation, Dr. Kargas specified that Devine should continue psychiatric hospitalization with the prescribed medication for an indefinite period, and that the medication should be forcibly injected, if necessary; otherwise, a relapse of Devine's psychotic condition would occur.

Dr. Kargas stated that, in his opinion, Devine was not making up symptoms during his stay at the United States Medical Center. Dr. Kargas again interviewed Devine in Pierre the evening before trial to update his conclusions. Dr. Kargas testified that in this interview, Devine said that he "intentionally" got into trouble. Dr. Kargas testified that in his opinion Devine was sane and competent to stand trial, and that Devine was in remission from a schizoaffective disorder when discharged from his care, but was suffering from an anti-social personality disorder.

Devine challenges the admissibility of the statements he made to the psychiatrists during the course of their examinations. He argues that SDCL 23A–10–2 and 23A–10–4, when read in connection with SDCL 19–13–7, 19–13–10, and 19–13–11, impermis-

sibly compel him to choose between exercising his Fifth Amendment constitutional right not to incriminate himself and his due process right to seek out available defenses. *See Collins v. Auger,* 428 F.Supp. 1079, 1083 (S.D.Iowa 1977), *reasoning approved,* 577 F.2d 1107 (8th Cir.1978).

A defendant in a criminal case raising the insanity defense must, at his arraignment, specially plead "not guilty and not guilty by reason of insanity." SDCL 23A–10–2.[1] SDCL 23A–10–4 provides for court-appointed medical experts and requires that the defendant submit himself for examination by the experts. SDCL 23A–10–4 further states that "[n]o statement made by an accused in the course of any examination provided for by this section, whether the examination was with or without the consent of the accused, shall be admitted in evidence against him on the issue of guilt in any criminal proceeding except for the purpose of impeaching the defendant." SDCL 23A–10–4.

Pursuant to SDCL 19–13–7, "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his ... mental or emotional condition ... among himself, ... or psychotherapist...."[2]

SDCL 19–13–10 creates an exception to this privilege: "If the court orders an examination of the ... mental or emotional condition of a patient, whether a party or a witness, communications made in the course thereof are not privileged under § 19–13–7 with respect to the particular purpose for which the examination is ordered unless the court orders otherwise."

A further limitation on the SDCL 19–13–7 privilege appears in SDCL 19–13–11: "There is no privilege under § 19–13–7 as to a communication relevant to an issue of the ... mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense...."

SDCL 23A–10–4 prohibits the use of psychiatric testimony against a defendant on the issue of guilt. Psychiatric examinations are ordered for the purpose of determining sanity or competency. SDCL 19–13–10 only excepts from the physician-patient privilege those communications made in connection with the particular purpose for which an examination is ordered—i.e., to determine sanity or competency, not guilt. Likewise, SDCL 19–13–11 excepts from the physician-patient privilege those communications relevant to the defendant's defense. In light of SDCL 23A–10–4, we read SDCL 19–13–11 to mean that the exception to the SDCL 19–13–7 privilege is limited to communications that are relevant to establish mental illness or competency, rather than guilt.

In *Collins v. Auger,* 577 F.2d 1107 (8th Cir.1978), the Eighth Circuit Court of Appeals prohibited a State from admitting psychiatric testimony evidencing incriminating statements by a defendant elicited during a mental illness defense examination. As noted our statutes compel the same conclusion.

The Fifth Amendment privilege bars the use of an incriminating statement made to a psychiatrist for the purpose of proving a defendant's guilt. *See United States v. Bennett,* 460 F.2d 872, 878–80 (1972); *Thornton v. Corcoran,* 407 F.2d 695, 699–701 (D.C.Cir.1969); *United States ex rel. Smith v. Yeager,* 451 F.2d 164, 165 (3d Cir.), *cert. denied,* 404 U.S. 859, 92 S.Ct. 112, 30 L.Ed.2d 101 (1971); *United States v. Williams,* 456 F.2d 217, 218 (5th Cir.1972); *United States v. Reifsteck,* 535 F.2d 1030 n. 1 (8th Cir.1976); *United States v. Julian,* 469 F.2d 371, 375–76 (10th Cir.1972). The same rule applies in the state courts by force of the Fourteenth Amendment. *Gibson v. Zahradnick,* 581

---

1. Pursuant to SDCL 23A–7–2(5), a defendant may also plead "guilty but mentally ill."

2. Each expert witness qualified as a psychotherapist according to the SDCL 19–13–6(3) definition.

F.2d 75 (4th Cir.1978) *cert. denied,* 439 U.S. 996, 99 S.Ct. 597, 58 L.Ed.2d 669 (1978).

█ The question remains whether such incriminating statements are admissible to establish mental condition in a unitary trial which involves both sanity and guilt issues, without prejudicing the defendant's due process rights. *Id. See also Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941).

The lower court in *Collins v. Auger* stated:

> [I]t is fundamentally unfair to use defendant's incriminating admissions to a psychiatrist during a psychiatric examination as part of the prosecution's case to establish his guilt. It is immaterial in this regard whether the Court ordered examination was at the request of Defendant or the prosecution or whether it was to determine his capacity to aid in his own defense or his mental condition at the time of the crime. The fundamental unfairness of the introduction of such evidence violates Defendant's right to due process under the 14th Amendment to the Constitution of the United States. The Defendant is entitled to raise his mental condition at the time of the offense as a defense. He is also entitled under proper circumstances, to an examination to determine his competency to stand trial. Psychiatric examinations are essential to and proof of his mental condition. . . .

> If a Defendant cooperated with the psychiatrist and made a full disclosure of his thinking processes and his background, including incriminating statements and if he failed to establish his lack of mental capacity, he would be faced with these admissions on trial. If a Defendant exercised his right to remain silent and refused to cooperate with the psychiatrist, the likelihood of a meaningful and reliable examination would be considerably decreased and his opportunity to urge a possible defense forfeited. A Defendant must not be compelled to choose between exercising his 5th Amendment right not to incriminate himself and his due process right to seek out available defenses.

*Collins v. Auger,* 428 F.Supp. 1079. 1082–83 (S.D.Iowa 1977) (quoted in large part by *Collins,* 577 F.2d at 1109–1110). The *Collins* decision does, however, indicate a different result had the independent evidence of guilt been so overwhelming that the only real issue before the jury was the mental condition of the defendant. From our reading of *Collins,* the admission of incriminating statements made by the defendant to a psychiatrist during a psychiatric examination constitutes prejudicial error *when other evidence of guilt presented at the trial is not so strong* as to negate any actual prejudice resulting from the statements. We are not persuaded by the state's argument that this prohibition applies only to proof of guilt, but that the statements are nevertheless admissible to establish the defendant's mental condition at a unitary trial, involving both sanity and guilt.

Where independent evidence of guilt is not so strong as to negate the actual prejudice, *Collins* seems to require a bifurcated trial to insure fairness. The alternative to a bifurcated trial when a unitary trial cannot satisfy due process is for the jury to resolve the sanity issue without all the relevant facts. The prosecution would then be precluded from extensive inquiry concerning the insanity defense. "Not only was the mental examination to determine [the defendant's] sanity required to maintain a 'fair state-individual balance,' but it follows that if the State must 'shoulder the entire load' of establishing sanity beyond a reasonable doubt, it must have the means to do so at its disposal. The State should not have to rely on examinations made only by experts chosen by [the defendant] leaving it with recourse only to cross-examination of them, or to its selected and hypothetical questions." *See Bremer v. State,* 18 Md.App. 291, 316–18, 307 A.2d 503, 519–20, *cert. denied,* 269 Md. 755 (1973), *cert. denied,* 415 U.S. 930, 94 S.Ct. 1440, 39 L.Ed.2d 488 (1974) (*relying on Miranda v. State,* 384 U.S. 436, 460, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

Under Devine's position the psychiatrists in a unitary trial could express their conclusions but give no background or foundation if it involved incriminating admissions. This denies the trier of fact the opportunity to hear all the evidence necessary to weigh the validity and credibility of the expert's conclusions. *See People v. Culpepper,* 59 Mich.App. 262, 266, 229 N.W.2d 407, 409 (1975). It is for the finder of fact to determine the weight and credibility to be given the experts' opinions as justified by the foundation for those opinions and other facts. *State v. Gallegos,* 316 N.W.2d 634 (S.D.1982); *State v. Romero,* 269 N.W.2d 791 (S.D.1978); *State v. Bush,* 260 N.W.2d 226 (S.D.1977); *State v. Graves,* 83 S.D. 600, 163 N.W.2d 542 (1968).

A bifurcated trial has been used in California and Colorado since 1927, in Texas since 1937, and in Louisiana since 1928. *State v. Shanahan,* 10 Ariz.App. 215, 216, 457 P.2d 755, 756–57 (1969). "The concept of bifurcated trials arose from the realization that 'substantial prejudice may result from the simultaneous trial on the pleas of insanity and not guilty.'" *Jackson v. United States,* 404 A.2d 911, 925 (D.C. 1979), *citing Holmes v. United States,* 363 F.2d 281, 282 (D.C.Cir.1966). "The aim of a bifurcated trial is to mitigate the possibility of such prejudice by separating as much as possible the issue of mental responsibility from the factual elements of the accused's conduct." *Jackson,* 404 A.2d at 925, *citing United States v. Taylor,* 510 F.2d 1283 (D.C.Cir.1975).

In some states a bifurcated trial is conducted as a matter of course pursuant to statute when there are dual issues of sanity and guilt. *See People v. Phillips,* 90 Cal.App.3d 356, 153 Cal.Rptr. 359 (1979); *People v. Rosenthal,* 617 P.2d 551 (Colo. 1980); *State v. Spurgin,* 358 N.W.2d 648 (Minn.1984); *Commonwealth v. DiValerio,* 283 Pa.Super. 315, 423 A.2d 1273 (1980). Generally, the issue of guilt is tried first, followed by trial on the sanity issue. *See* Cal.Penal Code § 1026 (1956); Art. 8, Colo. C.Crim.P. § 16–8–101, *et seq.,* C.R.S.1973 (1978 Repl.Vol. 8); Me.Rev.Stat. tit. 17–A, § 59 (Supp.1977); Minn.R.Crim.P. 20.02

subd. 6 (as found in the Minnesota Statutes vol. 49 (Supp.1983)); *Sec.* 404(c) of the Mental Health Procedures Acts, 50 P.S. § 7404(c), Pa.R.Crim.P. 305(C)(1)(b). South Dakota does not have statutes directing a bifurcated trial.

Other states addressing the issue without the benefit of statutory guidance allow bifurcated trials only when a defendant shows he or she has a substantial insanity defense *and* a substantial defense on the merits to any element of the crime charged, and that either defense may be prejudiced by the other in a unitary trial. *See Houston v. State,* 602 P.2d 784, 787 (Alaska 1979); *Garrett v. State,* 320 A.2d 745, 748 (Del.1974); *People v. Alerte,* 120 Ill.App.3d 962, 974, 76 Ill.Dec. 452, 460–61, 458 N.E.2d 1106, 1114–1115 (1983); *People v. Robinson,* 102 Ill.App.3d 884, 889, 58 Ill. Dec. 23, 28, 429 N.Ed.2d 1356, 1361 *cert. denied,* 105 S.C. 777 (1981); *State v. Monk,* 63 N.C.App. 512, 305 S.E.2d 755, 760–61 (1983). The rationale of these decisions seems alien to the foundation of criminal law concerning the burden of proof, *Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), because they require the defendant to show a substantial defense. It is not confined to the sufficiency of the prosecution's showing. This court has consistently preserved the absolute burden of the state at all stages of a criminal prosecution to establish every material element of the offense, *State v. Wilcox,* 48 S.D. 289, 204 N.W. 369 (1925), including sanity. *State v. Gallegos,* 316 N.W.2d 634 (S.D.1982); *State v. Kindvall,* 86 S.D. 91, 191 N.W.2d 289 (1971).

In *Novosel v. Helgemoe,* 118 N.H. 115, 124, 384 A.2d 124, 129 (1978), the New Hampshire Supreme Court held that when a defendant pleads not guilty and not guilty by reason of insanity "[i]n the normal course, ... the not guilty plea coupled with an insanity defense should be bifurcated *upon request of the defendant.*" (Emphasis supplied.)

In *Jackson v. United States,* 404 A.2d 911, 925 (D.C.1979), the Court of Appeals

expressed what appears to be the procedure followed in at least part of the federal court system. Under that procedure the decision to bifurcate rests within the discretion of the trial judge. *Id., citing Harris v. United States,* 377 A.2d 34 (D.C.1977); *Shanahan v. United States,* 354 A.2d 524 (D.C.1976). "The court not only has a broad discretion in considering bifurcation, but also in prescribing its procedure." *Jackson,* 404 A.2d at 925, *citing Holmes,* 363 F.2d at 283. "The procedure adopted, however, must effectuate the purpose of bifurcation by guarding against two types of prejudice inherent in a unitary trial involving insanity: (1) prejudice to a defendant's insanity defense arising from the evidence on the merits, and (2) prejudice to a defendant's defense on the merits arising from the insanity evidence." *Jackson,* 404 A.2d at 925.

The necessity to find both guilt and sanity is activated in South Dakota when the defendant pleads "not guilty and not guilty by reason of insanity" under SDCL 23A–10–2. A two stage procedure assumes that guilt can be fully adjudicated without inquiry into the mental condition or defect.[3] The bifurcation results in the separation of guilt from sanity because the factfinder is not allowed in the guilt phase to hear evidence of sanity until guilt has been determined. *Novosel,* 118 N.H. at 124, 384 A.2d at 129.

■ From *Collins, Novosel, Jackson,* and the case law of this State, we conclude that upon request of the defendant for a bifurcated trial based on incriminating statements made during a psychiatric examination in connection with a plea of not guilty and not guilty by reason of insanity, the court, in order to protect the defendant's Fifth Amendment rights should generally direct a bifurcated trial. Failure to

then bifurcate is prejudicial unless from the showing of the State, the court can reasonably conclude the evidence of guilt is so strong as to negate any actual prejudice to the defendant in a unitary trial from the incriminating statements. When a bifurcated trial is ordered, the court should also prescribe its procedure. As expressed in *Jackson, supra,* however, that procedure must effectuate the purpose of bifurcation by guarding against (1) prejudice to a defendant's insanity defense arising from the evidence on the merits, and (2) prejudice to a defendant's defense on the merits arising from the insanity evidence. If a bifurcated trial is not ordered, the jury must be clearly instructed that the incriminating statements may be considered only as to the issue of sanity.

The court's determination involves discretion. *See Jackson,* 404 A.2d at 925. In practice, this requires a balancing process similar to that employed in reviewing the probative value versus prejudicial effect of evidence under SDCL 19–12–3. *State v. Holland,* 346 N.W.2d 302 (S.D.1984); *see also State v. Means,* 363 N.W.2d 565 (S.D. 1985); *State v. Dace,* 333 N.W.2d 812 (S.D. 1983); *State v. Johnson,* 316 N.W.2d 652 (S.D.1982); *State v. Houghton,* 272 N.W.2d 788 (S.D.1978).

■ We conclude that the evidence of the burglary was so strong in this case that the only real issue was Devine's mental condition when it was committed. Because Devine's statements were a necessary basis for, and relevant to, the psychiatrist's opinions on sanity, *Culpepper, supra; State v. Sarinske,* 91 Wis.2d 14, 280 N.W.2d 725, 741 (1979), we believe he has failed to show prejudicial error or an abuse of discretion. *See Holland, supra; Means, supra; Dace, supra; Johnson, supra; Houghton, supra.* The evidence of his statements ac-

---

**3.** Some jurisdictions have likewise experienced problems with that assumption when specific intent is a material element of the offense. Others have held that bifurcated trials which preclude any evidence on the defendant's mental state during the guilt phase of the trial unconstitutionally create an irrebuttable presumption of sanity and impermissibly relieve the state from its burden of proof on the mental elements of an offense. *See State v. Shaw,* 106 Ariz. 103, 471 P.2d 715 (1970), *cert. denied,* 400 U.S. 1009, 91 S.Ct. 569, 27 L.Ed.2d 622 (1971); *Morgan v. State,* 392 So.2d 1315 (Fla.1981); *State ex rel. Boyd v. Green* 355 So.2d 789 (Fla.1978); *Sanchez v. State,* 567 P.2d 270 (Wyo.1977).

cordingly was no more than harmless error. SDCL 23A–44–14.

We have reviewed Devine's challenge to the jury instructions. In light of our conclusion herein, we find that claim to be without merit.

Affirmed.

WOLLMAN and MORGAN, JJ., and WUEST, Supreme Court Judge, Acting as a Supreme Court Justice, concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Perhaps this decision will be of help to the future Devines of the legal world in South Dakota, but it will be of no legal comfort to this Mr. Devine. Lacking a statute, we now create by judicial fiat a bifurcated trial upon (1) the guilt or innocence issue, and (2) the sanity question. Respectable authority exists therefor (even absent statute) and I truly do not quarrel with my colleagues on the creation of this revolutionary procedure in South Dakota. There is theoretical good in the majority's position on the bifurcated trial concept. It is, in effect, a new procedural wind blowing across our legal prairie, but it is a good wind. It is a device to avoid prejudice at trial. Therefore, I fault it not. We must be mindful, in deciding this case, that Devine did not have a bifurcated trial. We have created a new theorem in criminal trial practice but Devine's trial anteceded the theorem. Therefore, the blight sought to be eliminated in the future was not an advantage of which Devine partook. Devine did not drink from its cup. It would appear axiomatic that Devine should share somehow, someway, in the very case in which he is so deeply involved and has received a sentence to the South Dakota State Penitentiary for a term of 35 years. I confess that I am tremendously troubled by this long-term incarceration because of the facts and circumstances of this specific intent crime, namely, second-degree burglary, and the facts and circumstances which attend this conviction.

Devine was apparently blind drunk, unable to be understood, and was manifesting delusions of total unreality at the "crime" situs, which I shall detail below.

Devine has a long history of mental illness. Due to this, his lawyer moved the court for a psychiatric or psychological evaluation. The order was entered by the trial court and Devine was examined by Dr. Charles Warrender at Pierre, South Dakota. During this interview, Devine related that he had made up symptoms of mental illness so that he might be transferred from a federal penitentiary in Minnesota to a medical center for federal prisoners in Springfield, Missouri. Dr. Warrender testified, before the jury, to this divulgence. Question: Does this evidence so received, work against him on the issue of guilt or a possible verdict of "not guilty by reason of insanity"? I say that it does because it addresses a matter of intent and the defense of mental illness thereto. Note that I have stated that Devine had a long history of mental illness. This was so indicated by Dr. Warrender in his testimony which was based upon an extensive history of psychiatric treatment at the Human Services Center in Yankton, South Dakota, and the U.S. Medical Center in Springfield, Missouri. Another doctor, Dr. Kargas, interviewed, observed, and treated Devine during a period of time from August 12, 1982, until March 14, 1983, at the U.S. Medical Center in Springfield, Missouri. Dr. Kargas testified that Devine professed a schizoaffective disorder. Dr. Kargas prescribed, while Devine was incarcerated, a psychotic medication known as Navane and an antidepressant drug, Norpramin. A startling fact is that Dr. Kargas recommended that Devine, even after discharge from the federal facility at Springfield, Missouri, continue with psychiatric hospitalization upon medication for an indefinite period of time under the supervision of a psychiatrist. If Devine refused medication, Dr. Kargas admonished that it should be forced upon him, if necessary, intramuscularly, to prevent relapse. Over strenuous objection, Dr. Kargas testified during the course of this trial that Devine told him

that he, Devine, "intentionally got into trouble." Such a statement goes to the innocence or guilt of Devine and cannot be covered up by this Court with the prosecutor's friend, "harmless error." The statement amounts to a confession of fact. This statement does not go to the mental condition begged by the statutes of this state as a legitimate source of inquiry. This statement addresses his guilt. This statement was compelled and is contrary to our state statutes, the constitutional restraints of the Fifth and Fourteenth Amendments to the United States Constitution, not to mention our own state constitution. Of this, I shall detail below. Dr. Pesce also interviewed Devine for a considerable period of time and on numerous occasions at the said Human Services Center. Throughout numerous interviews, Devine made statements, to which Dr. Pesce testified, that he, Devine, was seeking alternatives from being sent to prison. This all went before the jury and unquestionably influenced the jury in finding Devine not only guilty but sane at the time of the commission of the "crime." In sum, three psychiatrists were called to the stand and testified and offered testimony to demonstrate Devine's guilt.

It is worse than what I have portrayed above. Yes, worse. Dr. Warrender testified that Devine possessed an antisocial personality based upon his previous brushes with the law and that antisocial personality types are characterized by repeated acts of vandalism, theft, and incarceration. Bear in mind, that the purpose of the Fifth Amendment is that, basically, an accused should not be forced to produce evidence and be convicted from that which issues out of his own mouth. Rather, the government must produce evidence against an accused by its own independent labors. *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 414, 86 S.Ct. 459, 464, 15 L.Ed.2d 453, 458–59 (1966); *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653, 659 (1964). Dr. Pesce was permitted to testify that Devine "told me that he had committed a crime, that he wanted to go to evaluation to be able to come up with a better solution for the problem, I mean he was talking about going to trial and maybe prison." Oh, how far did the trial court stray from its original purpose to secure a psychiatric or psychological evluation? Here, we have evidence going before the jury about Devine's intentions to have an evaluation. True, counsel for Devine asked for a psychiatric evaluation. Well that he should have done so, for Devine's long history of mental illness had to weigh heavily upon him. But it was the trial court who ordered that a psychiatric/psychological evaluation take place. Therefore, Devine's statements to these three psychiatrists were compelled under the law.

> [I]t is fundamentally unfair to use defendant's incriminating admissions to a psychiatrist during a psychiatric examination as part of the prosecution's case to establish his guilt. It is immaterial in this regard whether the court ordered examination was at the request of defendant or the prosecution or whether it was to determine his capacity to aid in his own defense or his mental condition at the time of the crime.

*Collins v. Auger*, 428 F.Supp. 1079, 1082 (S.D.Iowa 1977), *reasoning approved*, 577 F.2d 1107 (8th Cir.1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979). Dr. Kargas was permitted to testify that Devine "intentionally got [himself] into trouble on November 6, 1983," that he was turned down for jobs "because of his prison record," and "[w]ent to his Aunt's place and broke up the place." This is how far the trial court went in permitting testimony in this case. When all of this compelled testimony was plastered before the jury by professionals, Devine's chances for a fair trial were nihil. Out of the mouth of Dr. Kargas came the infectious testimony of Devine's "prison record," which had been compelled out of the mouth of Devine via court order. Surely, had Devine's lawyer known that all of this evidence would have come before the jury, he would never have moved for a court order for psychiatric examination and evaluation.

I can well understand that the fruits of the accused's compelled disclosures may be used in determining his competency to stand trial, but surely it cannot be used against him at the trial itself. I subscribe to the rationale in *United States v. Alvarez*, 519 F.2d 1036, 1042 (3rd Cir.1975), which states:

This circuit is committed to the position that use at trial of statements exacted by the compulsion of a court ordered psychiatric examination, at least where any statement elicited in the examination tends to establish the fact of the offense or the voluntariness of other statements by the accused, is a violation of the privilege against self-incrimination. (Citing *United States ex rel. Smith v. Yeager*, 451 F.2d 164 (3rd Cir.1971), *affirming* 336 F.Supp. 1287, 1305 (D.N.J.1971)).

This case has been cited with approval in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Gibson v. Zahradnick*, 581 F.2d 75 (4th Cir.1978), *cert. denied*, 439 U.S. 996, 99 S.Ct. 597, 58 L.Ed.2d 669 (1978); *United States v. Dysart*, 705 F.2d 1247 (10th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983); *Collins v. Auger*, 428 F.Supp. 1079; and *United States v. J.D.*, 517 F.Supp. 69 (S.D.N.Y.1981). There can be no doubt that Devine was entitled to raise his mental condition at the time of the "crime" as a defense. Perforce, he is likewise entitled to an examination to determine his competency to stand trial and a psychiatric examination which addresses the proofs of his mental condition. Devine should not be compelled to choose between exercising his Fifth Amendment right to not incriminate himself and his due process right to seek out available defenses. The majority opinion recognizes this concept, as established in *Collins v. Auger*, 428 F.Supp. 1079, but then artfully attempts to avoid the demands of the constitutional concept. In *United States v. Reifsteck*, 535 F.2d 1030, 1034 n. 1 (8th Cir.1976), that Court admonished:

We emphasize that admission of psychiatric testimony on the issue of sanity at the time of the offense which included statements of the accused relating to guilt would raise serious self-incrimination questions.

As the majority opinion recognizes, incriminating statements made to a psychiatrist are inadmissible on the issue of guilt because such a practice violates the Fifth and Fourteenth Amendments to the United States Constitution. *See Gibson v. Zahradnick*, 581 F.2d at 78, and the cases cited therein. Such a practice also violates South Dakota Constitution Article VI, § 9, and SDCL 23A–10–4.

South Dakota Constitution Article VI, § 9, provides that criminal defendants shall not be compelled to give evidence against themselves. As noted in my concurrence in part and dissent in part in *State v. Neville*, 346 N.W.2d 425, 431 (S.D.1984), there is a pertinent difference between our constitutional protection and that afforded by the Fifth Amendment. Our constitution provides a broader protection and SDCL 23A–10–4 incorporates this protection when it provides, inter alia:

No statement made by an accused in the course of any examination provided for by this section, whether the examination was with or without the consent of the accused, shall be admitted in evidence against him on the issue of guilt in any criminal proceeding except for the purpose of impeaching the defendant.

Intent. It is so important here. Devine is accused of second-degree burglary which requires an intent to commit a crime. Specifically, he was convicted of SDCL 22–32–3, which provides:

Any person who enters or remains in an occupied structure with intent to commit any crime therein under circumstances not amounting to first degree burglary, is guilty of second degree burglary. Second degree burglary is a Class 3 felony.

The psychiatrists' testimony, concerning divulgences made to them by Devine, probed and proved on intent. South Dakota had to prove that Devine had an intent to commit a crime when he entered or remained in his

Aunt's apartment. The State used the statement of Dr. Kargas to prove intent, for Dr. Kargas, during trial, to which I alluded above, testified that Mr. Devine told him that he, Devine, "intentionally got into trouble." Devine's mental illness, combined with his blind drunkenness, bears directly on the intent element. Yet, the trial court permitted this to be stripped away by permitting the psychiatrists to testify as to statements elicited during the course of their examinations which bore directly on his intent. Numerous objections by defense counsel protesting this type of testimony on the basis that prejudice would flow to Devine were overruled by the trial court; the trial court consistently took the position that Devine placed his sanity at issue during the course of the trial and had thus waived the physician-patient relationship created by SDCL 19–13–7 and SDCL 19–13–11. This was error. Twelve hours prior to this "crime," per testimony of Devine's sister, Devine stopped and saw her. Devine asked if he could see his brother Wayne who had not been in the Pierre area for over a year and told her to tell him hello in case he would come back; her testimony was also that Devine was asking about his Grandmother and wanted to see her but in truth and in fact, she had been dead for four years. His sister testified that he was irrational and "didn't really know what he was saying." Devine's sister further testified that the Aunt had stopped in a few days before this incident and told her that he, Devine, should come up to the apartment and see and visit her. An officer testified at a preliminary hearing, which was confirmed at trial, as follows:

Q. Did he say anything?

A. No, he was—appeared to be intoxicated, and he didn't say anything.

\* \* \* \* \* \*

Q. Did he look real drunk, in fact?

A. Yes, sir.

My point is this: The intent of Devine was very much in issue and the words from his mouth, as testified to by the psychiatrists, did more to convict him than any testimony in the entire trial. When the hotel manager found the door open to the Aunt's apartment, in broad daylight at 1:00 p.m., he testified that Devine was simply standing amidst a disheveled apartment. When the hotel manager asked him where his Aunt was, Devine muttered: "I don't know." The police officer asked the same question when he arrived, and received the same answer, "I don't know."

The majority opinion, however, avoids the personal protections provided by the constitutional provisions and the statute by finding the admission of the evidence here in question to not constitute prejudicial error. When constitutional safeguards have been violated, enter, you see, the prosecutor's friend. That friend is "harmless error." It can be sprinkled like a potion out of an old-time medicine bag with ardent hope of producing a legal cure. It often works. It should not serve as a bromide for those who serve appellate justice. Enter, occasionally, an antidote. This is called "prejudicial error." Friend of those seeking to advocate constitutional guarantees and those who would ring the Liberty Bell. "Prejudicial error" is not vacuous, vague, or vaporous. It has a well-settled meaning in this state. "Prejudicial error" is that which in all probability must have produced some effect upon the final result and affected rights of the party assigning it. *See K & E Land & Cattle, Inc. v. Mayer*, 330 N.W.2d 529 (S.D.1983); *State v. Tribitt*, 327 N.W.2d 132 (S.D.1982); *Matter of M.B.*, 288 N.W.2d 773 (S.D.1980); *State Highway Comm'n v. Beets*, 88 S.D. 536, 224 N.W.2d 567 (1974); *State v. Reddington*, 80 S.D. 390, 125 N.W.2d 58 (1963); and *State v. Pirkey*, 24 S.D. 533, 124 N.W. 713 (1910).

These three psychiatrists testified to Devine's statements that he committed burglary and "intentionally got into trouble." This testimony had to have produced an effect upon the final result and surely affected his substantive rights. Therefore, the error, which I understand the majority inferentially concedes, is prejudicial error as distinguished from harmless error. The

jury received no separate instructions in this unitary trial as suggested by the obiter dicta herein. The winds of bifurcation blow across the prairie of South Dakota, but not upon the breast of Devine, who is weighted with a sentence of 35 years behind prison bars.

Therefore, I would reverse this conviction and remand for a bifurcated trial, which is the wave of the future in South Dakota. Thereby, Devine would be the first recipient thereof. Fair and impartial trials have always been the pride and glory of the American court system. So let it be. For Devine, too.